UNITED STATES of America

v.

Saul RUTHEISER, Defendant.

United States District Court
S. D. New York.
March 26, 1962.
Supplementary Opinion April 19, 1962.

Robert M. Morgenthau, U. S. Atty., New York City, Ezra H. Friedman, Asst. U. S. Atty., of counsel for the United States.

Robert S. Kreindler, New York City, for defendant.

CASHIN, District Judge.

This is a motion by defendant to suppress certain evidence made pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure, 18 U.S.C. The defendant is charged in the second count of a two count indictment with the unlawful possession of goods stolen from interstate commerce in violation of Title 18 United States Code, § 659.

The facts are briefly these:

On March 21, 1961 at approximately 8:30 P.M. Government agents knocked on the door of defendant's house, identified themselves to defendant's wife and teenage daughter and asked to speak to the defendant. After showing the defendant their credentials, they asked to speak to him in private. The agents and defendant went into a small alcove or den which was furnished as an office and

892

the agents asked defendant if he had just sold some wearing apparel which he had bought that afternoon from a truck driver. Defendant denied that he had bought any wearing apparel. Agent Rock testified that Rutheiser then admitted he had purchased a carton of wearing apparel but threw it away. Agent Martin then told defendant that he had been under constant observation and that they knew he didn't throw the carton away.

Agent Rock testified that Agent Martin told Rutheiser that they would like to look around but that they did not have a warrant and he was in no way compelled to allow them to search the house. Defendant was also informed that the truck driver from whom Rutheiser allegedly purchased the carton of apparel was at F.B.I. headquarters. Rock testified that Rutheiser then said: "You might as well look around. The carton that you are interested in is down in the cellar." Rutheiser then, according to the agents' story, took them to the cellar and pointed out the empty carton. Defendant then led the agents upstairs and pointed out the contents of the empty carton. Upon being asked if that was all, defendant then took the agents into the attic and pointed out three cartons of women's Bermuda shorts which he said were also stolen.

The merchandise identified as stolen was collected and Rutheiser was then asked to accompany the agents to their office. They left defendant's house at approximately 9:15 P.M. At headquarters, Rutheiser and the truck driver Jones were confronted with one another and interrogated. Rutheiser signed a statement and was formally placed under arrest about midnight.

■ The Government contends that defendant's motion to suppress should be denied because defendant consented to the search and because the search was incidental to a lawful arrest. Taking the facts as testified to by the Government's own witnesses, it is conceded that defendant was not arrested until midnight of March 21, 1961, and that the search took

place some three and one-half hours prior to the arrest. It is thus hard to argue that the search was incidental to a lawful arrest. The Government argues that—

"Nevertheless, the defendant has repeatedly stated that the appearance of the officers in his home left him 'frozen' and that he was not aware of his rights. He further contends, although contradicted by the agents, that he was refused permission to telephone an attorney from his home.

"The Court might conclude from this (even disregarding the conflict of testimony as to the telephone) that the mere presence of the officers under color of law 'restricted defendant's liberty of movement' and action and constituted an arrest. Cf. Henry v. United States, 361 U.S. 98, 103, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959)."

I do not conclude that this action constituted an arrest and thus the search was not incidental to a valid arrest.

■ This leaves the question of whether or not defendant consented to the search. Such consent must be established by clear and convincing evidence and it must appear that there was no duress, actual or implied. Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654 (1921); Judd v. United States (1951) 89 U.S.App.D.C. 64, 190 F.2d 649, 651; Bolger v. United States (S.D.N.Y. 1960) 189 F.Supp. 237, aff'd Bolger v. Cleary, (2 Cir. 1961) 293 F.2d 368. The Government here has the burden of showing that a consent to search was unequivocal and specific and freely and intelligently given. I find that the Government has failed to sustain this burden. Defendant argues, and I so find, that the presence of the agents in his home at night created an atmosphere of coercion and duress, so that any ostensible consent or assistance to the agents was merely a submission to lawful authority, and not an effective waiver of his Fourth Amendment rights. It seems clear from the testimony of the agents themselves that Rutheiser preferred to go to the F.

B.I. headquarters because of the possible embarrassment in the neighborhood. Moreover, defendant's wife and teenage daughter were present and this probably added to Rutheiser's discomfort and embarrassment. Under these circumstances defendant's consent to search, if such was given, was not unequivocal or freely and intelligently given.

■ The Government argues that the doctrine of United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140 (1944) is applicable in the present instance. Mitchell, supra, stands for the doctrine that where a valid confession precedes a search, permission may show true consent to the search. However, the facts in the Mitchell case differ from the situation in the instant case. In Mitchell, the defendant was arrested, taken to the precinct station, confessed his guilt, told the officers of various items of stolen property in his home and consented to the officers going to his home to recover the property. In the instant case defendant was not arrested or taken into custody until after the search, and it is not at all clear whether the defendant confessed before the search or after he was taken down to F.B.I. headquarters and confronted with the truck driver. I find that defendant did acquiesce to the search by the agents. However, acquiescence which is resignation, a mere submission in an orderly way to the actions of the Government agents, is not that consent which constitutes an unequivocal, free and intelligent waiver of a fundamental right. Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Higgins v. United States (1954) 93 U.S.App.D.C. 340, 209 F.2d 819; Catalanotte v. United States (6 Cir. 1953) 208 F.2d 264; United States v. Gross (S.D. N.Y.1956) 137 F.Supp. 244; United States v. Gregory (S.D.N.Y.1962), 204 F.Supp. 884.

Defendant's motion to suppress with respect to the evidence obtained in his house during the course of the search is granted.

It is so ordered.

## SUPPLEMENTARY MEMORANDUM

In a Memorandum Opinion dated March 26, 1962 I granted defendant's motion to suppress certain evidence seized in defendant's house by Government agents on March 21, 1961. The facts, set forth in that opinion, need not be repeated here except in summary form. It was found that Government agents, after showing their credentials, entered defendant's house at night without a warrant, searched the house and uncovered certain wearing apparel alleged to have been stolen. During the course of the search, the defendant made several statements to the Government agents. He was later taken down to the agents' office where he was confronted with David Jones, a codefendant, who allegedly stole the goods and sold them to Rutheiser. At about midnight, Rutheiser signed a statement and was formally placed under arrest.

As was stated above, I granted defendant's motion to suppress the evidence obtained in his house during the course of the search. Defendant now asks that the statements, signed and oral, made by defendant during and after the search be suppressed on the ground that they resulted from the unlawful search and seizure, and as the fruit of the poisonous tree, must be suppressed.

■ ■ The prohibition on the use of illegally obtained evidence extends only to facts which were actually discovered by the illegal search or as a result of "leads" uncovered by the illegal search. Facts or information developed independently of the unlawful act are admissible. Silverthorne v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); United States v. Sheba Bracelets, Inc., 248 F.2d 134 (2 Cir. 1957), cert. den., 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed.2d 259. The Court has seen a copy of the statement that the defendant signed. This statement has no apparent connection with the illegally seized evidence and stems from Rutheiser's alleged purchase of stolen goods from Jones. This statement was based upon facts de-

894

veloped independently of the illegal search and thus defendant's motion to suppress this statement is denied.

Defendant's motion is, however, granted as to those statements which he made in his own home during the course of the search. These sprung directly from the illegal search and are therefore inadmissible.

Defendant's motion is granted as to any statements he made in his house during the illegal search on March 21, 1961 but denied as to subsequent statements made by defendant at the Government agents' headquarters which were obtained independently of the illegal search.

It is so ordered.