**UNITED STATES of America,
Plaintiff,**

v.

**Tony W. AVILA, Edward W. Avila and
Rose Leonardo, Defendants.**

**No. 38844.**

United States District Court
N. D. California, S. D.
May 31, 1963.

**4**

Toff & Gordon, Mountain View, Cal., for plaintiff.

Cecil Poole, U. S. Atty., San Francisco, Cal., for defendant.

SWEIGERT, District Judge.

On March 27, 1962, defendants herein, who had not yet been indicted, moved the Court to restrain the United States Attorney from presenting any evidence before the Grand Jury concerning income tax liabilities of defendants pending defendants' further motion to suppress certain evidence claimed to have been obtained by the Internal Revenue Service as the result of an investigation of the books and records of the defendants made in violation of Title 26 U.S.C. Section 7605.

After hearing on the motion to suppress, this Court on July 12, 1962, filed its Memorandum of Decision and, on August 10, 1962, an order suppressing all evidence and information gained by the Internal Revenue Service and its agents Kitano and Rogers, concerning any inspection of the records of defendants for the years 1954–1955, together with all evidence procured through the use of knowledge gained from such inspection, and directing that such evidence not be presented or used in any criminal prosecution of defendants.

Thereafter, on December 19, 1962, an indictment was returned by the Grand Jury against defendants charging them, in Counts First, Third and Fifth thereof, with income tax evasion for the calendar year 1955.

Defendants now move to dismiss the said three counts, and for a bill of particulars, upon the ground that said counts of the indictment were the result of the

use of such suppressed evidence or evidence procured through the use thereof.

In its previous memorandum the Court found in effect that Agent Kitano, sometime after his first 1957 examination of defendants' records for the years 1954–1955, while investigating a different business concern, Modesto Tallow Company, noticed that Modesto's records showed certain business payments to defendants in 1954–1955 (a fact quite indifferent in itself). Upon the basis of that knowledge, the agent became interested in finding out whether defendants had recorded such payments in their books and had included them in their tax returns for those years.

About September or October, 1958, Agent Kitano, under the pretext of examining defendants' books and records for the calendar year 1956, conducted a second examination of the books and records for 1954–1955 without the consent of the defendants in violation of Title 26 U.S.C. § 7605. In the course of this second examination, Kitano noted that the Modesto Tallow Company payments were not entered in the defendants' books of account.

According to an affidavit of Vera Gregg, bookkeeper for defendants, dated February 28, 1963, filed in support of defendants' pending motion to dismiss, "shortly after January, 1958"[1] Agent Kitano returned, accompanied by Agent Rogers, a criminal investigator. The agents advised her that they were conducting an investigation of the income tax liabilities of defendants. On that occasion, and on many subsequent occasions, they questioned her concerning entries or lack of entries in the books and records of defendants. Their questions indicated that they had examined the books and records for 1954–1955 and that they were of the opinion that certain receipts had not been recorded in defendants' books and records. On November 8, 1960, the agents returned and presented her with an affidavit purporting to state her testimony concerning the recording of receipts during the years 1954–1955 and the first three months of 1956. On November 28, 1962, pursuant to a subpoena, she testified before the Grand Jury which returned the pending indictment. According to her affidavit, Vera Gregg was questioned by the United States District Attorney in a fashion similar to the questioning which earlier resulted in her affidavit of November 8, 1960 and she was asked to identify that affidavit as hers.

Affidavits of the Assistant United States Attorneys state that they were both present during the Court hearing which resulted in the suppression order; that they were also present when Vera Gregg appeared before the Grand Jury; that one of them was also present when Agent Rogers of the Internal Revenue Service appeared before the Grand Jury; that no evidence "subject to the order suppressing evidence" was presented at the Grand Jury proceedings while they were present; that Agent Kitano did not appear before the Grand Jury.

An affidavit of Agent Rogers, filed herein by the government, is to the effect that he did not examine any books or records of defendants for the year 1955 and that his investigation of the case was limited to an examination of third party records and interviews with third persons. The accuracy of these statements, however, is put in question by a transcript of his testimony given at the earlier suppression hearing to the effect that he did examine cash receipt books for the years 1954–1955–1956 on January 30, 1959, at the business premises of defendants. (Tr. p. 78).

The question thus arises whether all or some of the information obtained by the Internal Revenue Service concerning unrecorded and unreported income for the year 1955 should be considered as having been procured by the use of the evidence gained in the illegal re-examination of the defendants' books and records.

1. This is apparently an error. The government concedes that this should be January, 1959.

■ Although the so-called "fruit of the poisonous tree" doctrine has generally been applied in cases involving searches in violation of the Fourth Amendment constitutional right [Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1962); Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1919)], the doctrine can be applied to searches in violation of a statutory right. Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939).

■ That doctrine is to the effect that an unlawful search taints not only evidence obtained at the search but facts discovered by a process initiated by the unlawful act. United States v. Paroutian, 299 F.2d 486, 489 (2d Cir. 1962).

■ The rule, however, does not extend to facts which, although actually discovered by a process initiated by the unlawful act, were obtained independently from a source sufficiently distinguishable to be free of the taint of illegality. Wong Sun v. United States, supra, 371 U.S. at 488, 83 S.Ct. at 417, 9 L.Ed.2d 441; Silverthorne Lumber Co. v. United States, supra; United States v. Sheba Bracelets, Inc., 248 F.2d 134 (2d Cir. 1957), cert. den. 355 U.S. 904, 78 S.Ct. 330, 2 L.Ed.2d 259 (1957); United States v. Rutheiser, 203 F.Supp. 891 (S.D.N.Y.1962).

■ However, a mere showing that the government had sufficiently independent information available so that in the normal course of events it might have discovered the questioned evidence without an illegal search cannot excuse the illegality or cure tainted matter.

Thus, the Court should exercise great care to determine whether the asserted "fruits of the poisoned tree" were *in fact* a product of the unlawful search—as they were held not to be in People v. Ditson, 57 Cal.2d 415, 20 Cal.Rptr. 165, 369 P.2d 714 (1962).

In the most recent expression of the Supreme Court on the doctrine, Wong Sun v. United States, supra, the Court had before it an illegal entry upon the premises of one Toy, and an illegal arrest of Toy, by narcotic officers who (1) obtained certain oral statements from Toy at the time of the arrest and, (2) obtained certain narcotics from one Yee as a result of those statements. The Court, reversing the Court of Appeals, held that both types of evidence were fruit of the illegal entry and arrest, saying: "We now consider whether the exclusion of Toy's declarations requires also the exclusion of the narcotics taken from Yee, to which those declarations led the police. The prosecutor candidly told the trial court that 'we wouldn't have found those drugs except that Mr. Toy helped us to.' Hence this is not the case envisioned by this Court where the exclusionary rule has no application because the Government learned of the evidence 'from an independent source,' Silverthorne Lumber Co. v. United States, 251 U.S. 385, 392 [40 S.Ct. 182, 64 L.Ed. 319]; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has 'become so attenuated as to dissipate the taint.' Nardone v. United States, 308 U.S. 338, 341 [60 S.Ct. 266, 84 L.Ed. 307]. We need not hold that all evidence is 'fruit of the poisonous tree' simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is 'whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' Maguire, Evidence of Guilt, 221 (1959). We think it clear that the narcotics were 'come at by the exploitation of that illegality' and hence that they may not be used against Toy." Id., 371 U.S. at 487–488, 83 S.Ct. at 417, 9 L.Ed.2d 441.

■ In the pending case, the record before us shows that the Internal Revenue Service, having exercised its statutory right of inspection for 1955 and having closed the case for that year and having thereafter learned that Modesto

Tallow had made certain purchases from defendants' business in that year, made its illegal re-examination of the books and records of defendants and thereby gained for the first time knowledge that certain payments had not been entered in defendants' business records.

Acting upon that knowledge obtained from the books, the Service confronted the defendants' bookkeeper with questions based on that knowledge and subsequently obtained her affidavit of November 8, 1960.

Thus, it affirmatively appears that evidence emanating from Vera Gregg, the bookkeeper, concerning the non-entry in defendants' books of Modesto Tallow payments has been in part ground for the return of the present indictment.

It is further inferrable from the record that evidence emanating from Vera Gregg, the bookkeeper, concerning non-entries in defendants' books of payments from other customers of defendant has been either presented to the Grand Jury or in due course may be offered by the government at the trial of this case.

The Court is of the opinion that such evidence should be held to have been obtained as an exploitation of the illegal re-examination of the books. It would be unreasonable to hold that such evidence has been "come at" by means sufficiently distinguishable to purge it of the primary taint.

It must be borne in mind that the government, having illegally examined the defendants' books, obtained knowledge of what entries were in the books and, putting the matter in its negative aspect, what entries were not in the books.

The books lead directly to the bookkeeper. She should not be used as an evasive means for disclosing what was or was not in the very books which the government is now prohibited from using directly. This is true, not only with respect to Modesto Tallow entries, but also with respect to non-entries of payments from any other customers which she may have disclosed either before or after the government acquired knowledge, assuming it did, of the existence of payments from such other customers.

With respect to non-entries concerning other customer payments which may have been disclosed by the bookkeeper before the government otherwise ascertained the fact of such customer payments, assuming such to be the case, there can be little argument. The government cannot prove the non-entry of such payments either through the books, which the government had illegally examined or (what amounts to the same thing) through the bookkeeper.

With respect to such non-entries which the bookkeeper may have confirmed after the government by independent means ascertained the existence of such customer payments, assuming such to be the case, the same conclusion follows. In this latter case, the government, having ascertained by independent means the existence of customer payments, would be simply using the bookkeeper to confirm the essential point of non-entry of such payments in the books— nonentries which the government, itself, presumably could have noted during its illegal re-examination of the books but which cannot now be proven by the books, themselves, nor in our opinion confirmed by the bookkeeper.

The question remains whether information concerning customer payments, obtained by the government subsequent to the illegal re-examination, by independently checking out other possible customers would be fruit of the poisonous tree, if the failure of the defendants to report such income in their tax return can be established without use of the books or the bookkeeper.

It is true that prior to the illegal re-examination, the government had no independently acquired knowledge, information or reasonable belief concerning any possible 1955 evasion sufficient to suggest such a check with independent sources. It had only knowledge of the non-entered Modesto Tallow payments.

The specific question is whether the fact that the government made such subsequent, independent investigation of other possible customer payments because of suspicions aroused by its illegal discovery of the non-entered Modesto Tallow payments renders such subsequent, independently obtained evidence also suppressible as the fruit of the poisonous tree.

To so hold would in effect immunize defendants from the use against them of all subsequently obtained evidence concerning income tax evasion no matter how properly obtained from independent sources.

That such was never intended to be the result of the doctrine is clear from qualifications stated in the foregoing decisions to the effect that, if evidence is gained from independent sources, it may be used in the same manner as any other evidence. Silverthorne Lumber Co. v. United States, supra; Wong Sun v. United States, supra; United States v. Sheba Bracelets, Inc., supra; United States v. Rutheiser, supra; accord, People v. Ditson, supra, 20 Cal.Rptr. at 180–182, 369 P.2d at 729–731.

We believe that a distinction must be made between evidence discovered by specific leads obtained during an illegal search or examination, on the one hand, and evidence "got at" through further investigation, which, although inspired by suspicions stemming from the illegal discovery, is successfully conducted through independent searches.

We conclude that evidence of customer payments to defendants obtained by the government from customers themselves or other independent sources would clearly be admissible provided the failure to report such income in defendants' tax return could be established without use of the books or the bookkeeper.

■ Whether the pending indictment should be dismissed presents another question. It is a well established rule that indictments, or any count thereof, should not be dismissed upon the ground that they have been obtained as the result of inadequate, hearsay or other incompetent evidence presented to the Grand Jury. Costello v. United States, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397 (1955); Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910).

It is true that, when certain evidence had already been suppressed by previous order of the Court, the burden shifts to the government to show the Court that other evidence, which the government may have, had an independent origin. United States v. Coplon, 185 F.2d 629, 636, 28 A.L.R.2d 1041 (2d Cir. 1950), cert. den. 342 U.S. 920, 72 S.Ct. 362, 96 L. Ed. 688 (1951); United States v. Goldstein, 120 F.2d 485, 488 (2d Cir. 1941); United States v. Paroutian, supra, 299 F. 2d at 489. The only specific showing made on this hearing concerning such claimed other evidence is the information obtained from Vera Gregg the bookkeeper and this Court has now ordered such evidence suppressed.

It is conceivable, however, that the government may now have, or may obtain prior to trial, evidence other than the evidence herein suppressed and that such evidence could conceivably support the counts of the indictment concerning the alleged 1955 tax evasion. The government is not limited at trial to evidence presented to the Grand Jury.

We conclude, therefore, to follow the general rule against dismissal of indictment on the ground of incompetent evidence before the Grand Jury and to deny defendants' motion to dismiss without prejudice, of course, to their right to assert objection, upon the prosecution's offer of proof at the trial, to any evidence within the terms of the suppression ordered by the Court.