421 So.2d 859 (1982)
STATE of Louisiana
v.
Aaron Daniel ROUBIQUE.
No. 82-KA-0243.
Supreme Court of Louisiana.
October 18, 1982.
Rehearing Denied November 19, 1982.
*860 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Kay Kirkpatrick, Michael McDonald, Asst. Dist. Attys., for plaintiff-appellee.
Chester Hugh Boyd, Baton Rouge, for defendant-appellant.
WARD, Justice Pro Tem.[*]
Aaron Roubique was charged by bill of information on June 11, 1981, with committing the crimes of possession of marijuana with intent to distribute and production of marijuana, which are defined by La.R.S. 40:967(A). Roubique pleaded not guilty and on July 8, 1981, he filed a motion to suppress evidence which had been seized pursuant to a search warrant. The Trial Judge denied the motion to suppress, and thereafter Roubique pleaded guilty to possession of marijuana with intent to distribute, reserving his right to appeal from the adverse ruling on the motion to suppress. State v. Crosby, 338 So.2d 584 (La.1976). The Judge sentenced Roubique to serve five years at hard labor and ordered him to pay a $5,000.00 fine, but he suspended the imprisonment and placed him on active probation for five years. As a special condition of his probation, the Judge ordered that he serve a year in the parish jail. Roubique appeals not only the Trial Judge's ruling denying his motion to suppress, but also appeals his sentence, contending that it is excessive.
There is no dispute as to what occurred on the afternoon of March 18, 1981, when members of the East Baton Rouge Parish Sheriff's Department executed a search warrant for Roubique's trailer home, located at 17735 Riverside Park in East Baton Rouge Parish. They seized over forty-seven pounds of marijuana, five marijuana plants, two and one-half methaqualone tablets, three grams of hashish, and $8,580.00.
The first of several issues raised by the defendant on appeal is whether the Trial Judge erred when he denied defendant's motion to suppress the evidence. Roubique contends that the search warrant should not have been issued in the first place. The search warrant was supported by the following affidavit:
Affiant informs the Court that on March 18, 1981, a confidential and reliable informant who has provided information to affiant over the past five (5) years which has led to the arrest and conviction of at least ten (10) persons for drug offenses, *861 contacted affiant and stated that on or about March 18, 1981, he, being said informant, had been present at the above described trailer and had observed a quantity of what was described by the occupant as Cocaine and Marijuana.
Affiant further informs the Court that said informant further stated that Aaron Roubique is well known to said informant and said informant has been present at the above location on several prior occasions in the past several months and has observed Cocaine and Marijuana or other controlled dangerous substances on these prior visits.
Affiant further informs the Court that affiant was contacted by Detective Greg Farris of the Baton Rouge City Police Department who stated that a confidential and reliable informant who has provided information which has led to several arrests informed him that Aaron Roubique was the occupant of the above described trailer and that said informant had purchased large quantities of marijuana from Mr. Roubique.
Affiant further informs the Court that a check with Gulf States Utilities shows service at 17735 Riverside Park Drive, in the name of Aaron Roubique.
Affiant further informs the Court that approximately one (1) month ago affiant observed a 1975 Ford bearing license 240X671 at the above residence and after checking registration found it belonged to Aaron Roubique.

ASSIGNMENTS OF ERROR NO. I & VI
Robique contends that the affidavit for the search warrant was tainted by a prior illegal entry onto his property by Captain Michael Barnette and that Barnette, who procured the warrant, intentionally withheld the facts of this entry from the issuing magistrate. Testimony given during the hearing of the motion to suppress proved that Barnette had, indeed, gone onto Roubique's land.
Other evidence produced in the motion showed that in February 1981, Officer Greg Phares of the Baton Rouge City Police Department contacted Captain Barnette of the Sheriff's Office to relay information which he had obtained from an informant. The informant had told him that Roubique had a large quantity of drugs at his trailer residence, and further, the informant had taken Phares to the general area where the trailer was located. Barnette knew Robique by reputation; he had conducted a surveillance of Roubique's prior residence, and he had monitored Roubique's activities following his move to Riverside Park.
Shortly after relaying this information to Barnette, in February 1981, Phares brought Barnette to the general area to obtain either a description or an address of the trailer. They drove a short distance on a gravel pathway which Barnette initially believed was a road paralleling the Amite River, but later realized was actually Roubique's driveway. Although at the entrance to the road, there was a sign: "Private Road, No Trespassing", Barnette testified he did not observe the sign when he first drove down the driveway. After driving a short distance, Barnette observed Roubique and another male in the front yard, and he stopped his vehicle and informed them that he was looking for a place to rent. After a brief exchange of words, the officers drove off. Barnette, however, had obtained the license number of a vehicle parked beside the trailer, and his later investigation showed that the vehicle belonged to Roubique. Additionally, Gulf States Utilities verified service to Roubique at that location.
Because Barnette believed that he had been recognized, the surveillance was discontinued, and no further activity occurred until March 18, 1981, when Barnette received the information described in the affidavit from another informant. The warrant was then issued, and the search followed.
The Trial Judge, after denying the motion to suppress, said that the only question which caused him concern was that of the officers' trip down the private road before the warrant was issued. The Judge explained:

*862 The Court feels that the only evidence gathered as such by that trip was the license number of the car as to Mr. Roubique. I feel the officer was in good faith and did not purposely trespass, though in truth and in fact it amounted to trespass. They were on private property and they had signs there. But, in my opinion, they had sufficient knowledge to have issued the warrant that was ultimately issued without the trip down the road. They had the location of the trailer, they had the name of the gentlemen that was allegedly working out at that trailer. And I'm not going to excise from the warrant information that they had previously acquired and received....
Roubique conceding that the only evidence which was obtained from the February entry was confirmation of the location of the trailer and the license number of the vehicle, nevertheless, argues that the evidence obtained from that illegal entry was used to construct the search warrant which was subsequently issued in March. On the other hand, the State argues that the officers' "unintentional patrol" onto the private drive did not constitute a search. Alternatively, the State argues that Roubique had no expectation of privacy as to his private road or in the area immediately surrounding his trailer. Finally, the State contends that the information contained in the affidavit used to support the warrant was attenuated from the entry onto Roubique's property by intervening factors.
Notwithstanding the State's first argument, there was a search of defendant's premises before the warrant was issued. In plain English, a search occurred when the officers perused the premises for the purpose of obtaining either a description or the address of the trailer and recording the license numbers of any vehicles on the premises.
The State's next argument, that the defendant did not have a reasonable expectation of privacy, is not supported by the law or the evidence. In Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the U.S. Supreme Court abandoned the Fourth Amendment test of "constitutionally protected areas" and declared:
"For the Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.... But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected." 88 S.Ct. at 511.
Hence, the inquiry must be directed to the question of whether Roubique had a reasonable expectation of privacy in the driveway to his trailer.
The sign at the road's entrance is ample evidence of Roubique's intent to preserve his privacy. Roubique's trailer was isolated, barely visible from the road, and no other vehicle could be seen. Clearly, Roubique had a reasonable expectation of privacy in the premises, and Barnette invaded Roubique's constitutionally protected right to privacy when he entered the posted property. Nevertheless, the evidence obtained from an illegal search need not be suppressed if the causal connection between the unlawful police conduct and the challenged evidence has "become so attenuated as to dissipate the taint." State v. Jenkins, 340 So.2d 157 (La.1976); Nardone v. United States, 308 U.S. 338, 341, 60 S.Ct. 266, 267, 84 L.Ed. 307, 312 (1939).
We believe that the affidavit for the search warrant was sufficiently attenuated from the trespass onto Roubique's property because the affidavit contained facts from an independent source which was not tainted by the trespass.
After the trespass, the second confidential informant gave Barnette information which was summarized in the affidavit and which clearly indicated probable cause to support the warrant. The informant described the trailer and its location, and the description corroborated the information Barnette had obtained from Gulf States Utilities. On the whole, the information obtained by Barnette through the trespass was negligible.
*863 Attenuation through an independent source was discussed by this court in State v. Marshall, 359 So.2d 78 (La.1978):
The rule which supports the views expressed here is not new. It was recognized in Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920), almost sixty years ago. There it was said that facts learned as a result of information obtained in an illegal search do not become sacred and inaccessible by reason of such illegality, and that if knowledge of them is gained from an independent source, they may be proved like any others. Adhering to the views expressed in that case, courts in a number of cases have held or recognized that the "fruit of the poisonous tree" doctrine excludes evidence obtained from or as a consequence of an unlawful search and seizure but that doctrine does not require the exclusion of such evidence when knowledge thereof can be attributed to an independent source. United States v. Avila, 227 F.Supp. 3 (D.C.Cal. 1963); State v. O'Bremski, 70 Wash.2d 425, 423 P.2d 530 (1967); 43 A.L.R.3d 399. See also this Court's decision in State v. Anderson, 358 So.2d 276 (La.1978).
For these reasons, we believe the Trial Judge correctly denied Roubique's motion to suppress the evidence. The Trial Judge clearly noted his concern about the officers' trip down Roubique's private drive, but he concluded that there were other independent sources of the information in the affidavit. We agree.
Roubique also argues that because there were material omissions from the affidavit, the affidavit is null. Although Barnette's affidavit did not disclose details of his entry onto the property, the omission of those details cannot be construed as a malicious or intentional misrepresentation by Barnette. Affidavits, by their nature, are brief, and some factual details must be omitted. Unless the omission is willful and calculated to conceal information that would indicate that there is not probable cause or would indicate that the source of other factual information in the affidavit is tainted, the omission will not change an otherwise good warrant into a bad one.
These assignments are, therefore, without merit.

ASSIGNMENTS OF ERROR NOS. II, III, IV, VII AND VIII
Roubique now argues two reasons why the affidavit did not show probable cause: he contends, first, that neither of the confidential informers was reliable, and second, even if they were reliable, the information which they gave was not because it was stale.
In State v. Paciera, 290 So.2d 681, 685 (La.1974), this court stated:
If we can deduce a rule from these cases, it is this: The affidavit submitted to the magistrate may be based entirely upon hearsay, but, if so, it must set forth underlying circumstances and details sufficient to provide a substantial factual basis by which the magistrate might find reliable both the informant and the information given by him. Factors which support the credibility of an unidentified informant include prior accurate reports or any specific independent corroboration of the accuracy of the instant report. Factors which support the credibility of the information report include (a) direct personal observation by the informant, or (b), if the information came indirectly to the informant, the reasons in sufficient factual detail for the magistrate to evaluate and credit the reliability both of the indirect source and of the indirectly obtained information. See State v. Linkletter, 286 So.2d 321 (La. 1973).
In the instant case, the reliability of Officer Phares's informant was established by the officer's statement that his informant had previously supplied information which had led to several arrests, even though those arrests were years before. Additionally, Phares's informant was independently corroborated by Barnette's confidential source who also gave information about Roubique's drug activities.
*864 As to the reliability of the information given by the informants, Barnette's informant observed the marijuana while he was inside the defendant's trailer, while Phares's informant's information was corroborated by Barnette's. The two independent sources corroborated each other and support the conclusion that their information was accurate. State v. Paciera, supra.
The information supplied by the informants was not stale. The affidavit indicated that on March 18, 1981, the very day the warrant was executed, Barnette's informant had observed in the trailer what was described by Roubique as cocaine and marijuana, and this information affords a reasonable basis for the conclusion that the drugs would not be disposed of before a search could be conducted. State v. Boneventure, 374 So.2d 1238, 1239 (La.1979).
Other issues argued in these assignments of error involve settled principles of law definitively decided by this Court.

ASSIGNMENT OF ERROR NO. IX
In this assignment, Roubique asserts that the Trial Judge erred in imposing a sentence which is excessive under the circumstances, and argues that the Trial Judge failed to utilize the sentencing guidelines of La.C.Cr.P. Art. 894.1 when he imposed sentence.
Roubique's sentence cannot by any standard be considered severe. He pleaded guilty to possession with intent to distribute forty-eight pounds of marijuana, the maximum sentence for which is imprisonment at hard labor for fifteen years and a fine of $15,000.00. Roubique was sentenced to serve five years at hard labor, but that part of the sentence was suspended. Roubique's $5,000.00 fine was more than reasonable; he had $8,585.00 cash in his trailer. Moreover, the special conditions of his probation reasonably relate to his rehabilitation.
Under La.C.Cr.P. Art. 894.1, the Trial Judge must state for the record the considerations taken into account and the factual basis for his conclusions in imposing sentence in order to insure that each sentence imposed is individualized to the offender as well as to the offense. State v. Jackson, 360 So.2d 842 (La.1978).
Here, although the Trial Judge did not enumerate each of the statutory guidelines, he explained on the record his reasons for imposing the sentence and the special conditions. He alluded to Roubique's character, his personal history, and his potential for rehabilitation before sentencing him. This was sufficient to particularize the sentence of the defendant and to comply with the sentencing guidelines of Art. 894.1.
We, therefore, affirm defendant's conviction and sentence.
AFFIRMED.
DENNIS, J., concurs.
NOTES
[*] Judges William H. Byrnes and David R.M. Williams of the Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices Pro Tempore, with Chief Justice Dixon and Associate Justices Calogero, Dennis and Watson.