427 So.2d 1174 (1983)
STATE of Louisiana
v.
Harold BRUNO.
No. 82-KA-0577.
Supreme Court of Louisiana.
February 23, 1983.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, *1175 Dist. Atty., John H. Craft, Mary Charlotte McMullan, Spencer Kimball, Clifford Strider, Asst. Dist. Attys., for plaintiff-appellee.
Calvin Johnson, Collins, Johnson & Volk, New Orleans, for defendant-appellant.
BLANCHE, Justice.
On August 17, 1981, New Orleans police officers, executing a search warrant issued seven days previous thereto, entered the residence of Harold Bruno and seized various amounts of "white powder", "green vegetable matter", pills, seeds, as well as assorted drug paraphernalia and a sawedoff shotgun. Bruno was charged with possession of marijuana (La.R.S. 40:966), possession of phencyclidine (La.R.S. 40:966), possession of diazepam (La.R.S. 40:969), and possession of an unregistered sawed-off shotgun (La.R.S. 40:1785). At the arraignment, defendant entered a plea of not guilty to all charges. Subsequently, he filed a motion to suppress the evidence seized in his home. After a hearing, the trial court denied the defendant's motion. Defendant then withdrew his not guilty pleas, and pled guilty to each offense as charged but reserving his right to appeal the trial court's ruling on his motion to suppress.[1] The trial judge sentenced the defendant to serve the following prison terms to run concurrently with one another: (1) twenty months in parish prison for possession of the shotgun, (2) twenty months in parish prison for possession of phencyclidine; (3) six months in parish prison for marijuana possession, and (4) twenty months hard labor, pursuant to a multiple bill, for possession of diazepam. In addition, Bruno was ordered to pay a $100 fine, $100 to the Criminal Court Operation Fund, $100 to OIDP and $74.50 for court costs as part of his sentence for phencyclidine possession.[2]
On appeal, the defendant contends that the trial court erroneously denied his motion to suppress, for the search warrant authorizing the search of his house was invalid. He argues that the facts alleged in the search warrant affidavit were too stale to support a finding of probable cause on the date of the execution of the warrant. He further asserts that the confidential informant's conclusion that a sawed-off shotgun was present in the defendant's residence was an improper basis for the magistrate's finding of probable cause in that the informant's conclusion was unsupported within the text of the affidavit.
The search warrant in question was issued on August 10, 1981 to search the premises located at 2233 Winthrop Street, New Orleans, Louisiana, for the purpose of seizing, "all contraband, controlled dangerous substances, more particular [sic] PCP and marijuana, along with its implements, instrumentalities and documents related to its distribution." The warrant was issued based on the facts recited in an affidavit submitted by Detectives Bethay and Swain. That affidavit reads in its entirety as follows:
(1) On Monday, August 10, 1981 Det. Forrest Bethay was telephonically contacted in the Narcotics Office by a reliable and confidential infromant [sic] whose information has lead to the arrest and conviction of persons engaged in the illegal distribution of narcotics within the city of New Orleans. During the course of the conversation the following facts were related to Officer Bethay by the CI. Within the past four days the CI had the occasion to be in the residence of HAROLD BRUNO located at 2233 Winthrop Street at which time the CI told Det. Bethay that he was able to purchase one gram of PCP for $100.00 from a N/M subject known to him as Harold Bruno. The CI further stated that while inside the aforementioned residence as unknown Negro male came to the residence at which time the CI observed Bruno sell the Negro male a bag of Marijuana for *1176 $10.00. The CI further informed Det. Bethay and Bruno drives a late modle [sic] red and grey Ford. The CI also stated that he observed a sawed off shot gun which Bruno had in the rear of his residence.
(2) Before leaving Bruno's residence Bruno told the CI that he would have more PCP and/or Marijuana later on Monday, and advised the CI to contact him again at his residence.
(3) On Monday August 10, 1981, Det. Bethay proceeded to relate the information he recieved [sic] to his partner, Det. Cynthia Swain. At approximately 12:30 p.m. DetsBethay and Swain began a surveillance [sic] of 2233 Winthrop Street. Immediately the officers observed the Grey and Red Ford described by the CI. As Det. Bethay drove past the residence Det. Swain was able to obtain the license plate number of the vehicle (LA Lic # 569B243). A computer check of the licence [sic] via police radio showed the vehicle to be registered to a Harold Bruno residing at 2233 Winthrop Street, 1976 Ford. At approximately 12:45p.m. Dets. Bethay and Swain observed a N/M walk up to the residence and knock on the front door. The N/M, approximately 30 years of age, wearing a white long sleeved shirt and blue jeans, stood on the front steps until a second N/M subject, who was about 25 years of age and wearing a blue short sleeved shirt and blue pasts [sic] came from the right side of the residence. Both subjects appeared to exchange greetings. The second subject opened the front door of the residence. Both subjects entered the residence. After a short period of time both N/M subjects exited the residence from the front door. The two subjects shook hands; the first subject walked away from the residence in a northbound directin, [sic] while the second subject took a seat on the front steps. At approximately 1:10 p.m. the officers observed a white four door Chevrole [sic] drive up to and stop in front of the residence. The vehicle was headed in a northbound direction on Winthrop St. The vehicle was occupied by a N/M and a N/f. The N/F exited the vehicle, while the N/M remained inside the vehicle seated behind the steering wheel. The N/F approximately 30 years of age and wearing green shorts and a red tube top walked up to the front steps where the N/M was still seating [sic] and was now reading a newspaper. The N/M still seated in the vehicle watched both the N/F and the N/M on the steps as well the surrounding area as if as a look out of some kind. The N/M on the steps opened the front door of the residence for the N/F but did not enter the residence himself. The N/M appeared to yell something to someone in the residence not visible to the officers. Shortly thereafter the N/F was observed exiting the residence. There appeared to be a N/M now standing in the door way apparently wering [sic] a white sleeveless undershirt. The subject was not clearly visible to the officers. The N/F reentered the vehicle, the couple did not drive off immediately. The N/F appeared to hand the N/M something. The N/M was then observed as he held a bag of some kind up to his nose. The couple remained in front of the residence for a moments [sic] longer and then drove away northbound on Winthrop St. The officers were unble [sic] to obtain a licence [sic] number of the vehice, [sic] but did notice that there was damage to the left rear fender. At approximately 1:45pm officers terminated surviellance [sic] due to the amount of pedestrians in the area.
(4) Upon the officers return to the Narcotics Office the Name of Harold Bruno was entered into the computer with the following results: Harold Bruno, N/M DOB 12-03-28 assigned NOPDB of I number 201829 with six felony arrests and on [sic] conviction and six misdemenor [sic] arrests, no convictions.
(5) Due to the information recieved [sic] from the CI and the surviellance [sic] confuvyrf [sic] by the officers it is their belief that contraband, controlled dangerous substances more particularly PCP and *1177 Marijuana are being secerted [sic] and distributed from 2233 Winthrop Street and respectfully request a search warrant be issued for sid [sic] premisses [sic].

Staleness of the Warrant
The validity of a search warrant can be affected by the passage of time. Previous decisions of this court have considered the question of timeliness of a warrant, and we have adopted the rule stated in Sgro v. United States, 287 U.S. 206, 53 S.Ct. 138, 77 L.Ed. 260 (1932), that "... the proof [of probable cause] must be of facts so closely related to the time of issue of the warrant as to justify a finding of probable cause at that time." State v. Gilbert, 354 So.2d 508 (La.1978); State v. Boudreaux, 304 So.2d 343 (La.1974). The focus of these decisions was on the lapse of time between the observation of the informant or affiant and the issuance of the warrant, due primarily to the fact that, in most cases, the warrant was executed shortly after its issuance. See State v. Tate, 407 So.2d 1133 (La.1981); State v. Tate, 407 So.2d 1131 (La.1981); State v. Boneventure, 374 So.2d 1238 (La. 1979); State v. Thompson, 354 So.2d 513 (La.1978).
In the case at bar, we are confronted with a related but different question of staleness. Our concern here is the effect of a delay in the execution of a search warrant on the validity of that warrant. We are called upon to examine the limitations imposed by statute and constitution upon the time when a search warrant may be executed.
The first limitation is expressed in La.C.Cr.P. art. 163 which provides that a search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance. Implicit in this article is the idea that evidence must be suppressed if seized pursuant to a search warrant executed later than ten days following its issuance. In our present case, there has been no statutory violation. The search warrant was executed seven days after its issuance, well within the statutory limits.
Irrespective of compliance with art. 163, a delay in the execution of a warrant may be constitutionally impermissible under the Fourth Amendment and La. Const. art. 1 § 5. See State v. Edwards, 98 Wis.2d 367, 297 N.W.2d 12 (1980); 2 LaFave, Search and Seizure, sec. 4.7, 114-116 (1978). With regard to these constitutional provisions, the validity of the search warrant does not depend upon the number of days elapsing between the issuance and execution of the warrant or the cause of the delay in execution. United States v. Bedford, 519 F.2d 650 (3rd Cir.1975). See State v. Armstead, 385 So.2d 241 (La.1980); State v. Flood, 301 So.2d 637 (La.1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Rather, the determining factor is whether the probable cause recited in the affidavit continues until the time of execution of the warrant.[3]United States v. Bedford, 519 F.2d 650 (3rd Cir.1975), cert. denied 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976); United States v. Nepstead, 424 F.2d 269 (9th Cir.), cert. denied 400 U.S. 848, 91 S.Ct. 50, 27 L.Ed.2d 86 (1970); State v. Swain, 269 N.W.2d 707 (Minn.1978); Donaldson v. State, 46 Md.App. 521, 420 A.2d 281 (1980); State v. Carangelo, 151 N.J.Super. 138, 376 A.2d 596 (1977); State v. Edwards, 98 Wis.2d 367, 297 N.W.2d 12 (1980); 2 LaFave, Search and Seizure, sec. 4.7, 114-116 (1978); See United States v. Wilson, 491 F.2d 724 (6th Cir.1974), cert. denied, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 831 (1976); United States v. Rael, 467 F.2d 333 (10th Cir.1972), cert. denied 410 U.S. 956, 93 S.Ct. 1429, 35 L.Ed.2d (1973).
We have held that probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonable trustworthy information, *1178 are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been committed. State v. Tate, 407 So.2d 1133 (La.1982); State v. Mena, 399 So.2d 149 (La.1981). The factual information which is the foundation for the determination of probable cause must be contained in the affidavit. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); State v. Flood, 301 So.2d 637 (La.1974), cert. denied 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975). Whether the affidavit establishes probable cause on the date of execution depends upon the facts and circumstances of each case. State v. Carangelo, 151 N.J. Super. 138, 376 A.2d 596 (1977); see State v. Chaffin, 324 So.2d 369 (La.1975); State v. Flood, 301 So.2d 637 (La.1974), cert. denied 421 U.S. 916, 95 S.Ct. 1577, 43 L.Ed.2d 782 (1975).
We find, in this case, that the facts contained in the affidavit do support a finding of probable cause on the day of the execution of the search warrant. The following information included in the affidavit indicates ongoing, drug-related activity on the premises sought to be searched: the informant observed the defendant sell marijuana at his residence; the informant purchased narcotics from the defendant; before the informant left, he was told by the defendant that more PCP and Marijuana would be available at his residence on a later date; affiants investigated the scene and observed suspicious activity often associated with drug distribution; more specifically, the affiants saw a person leave the residence and hold a bag to his nose. Thus, there were sufficient facts and circumstances recited in the affidavit to warrant a man of reasonable caution to believe that controlled dangerous substances would be on the premises one week after the issuance of the warrant.

Sawed-Off Shotgun
Defendant argues that the magistrate in his determination of probable cause could not use the fact, stated in the affidavit, that the informant observed a sawed-off shotgun in the defendant's house. He contends, in effect, that the affidavit must set out the underlying circumstances as to how the informant knew that the shotgun violated La.R.S. 40:1785, i.e. that the shotgun was unregistered with a barrel less than eighteen inches in length. We do not address this issue, for we have found that the persistent pattern of drug activity at the residence indicated by the affidavit would alone be sufficient to establish probable cause on the date of the execution of the warrant.

DECREE
Defendant's conviction and sentence are affirmed. AFFIRMED.
DENNIS, J., concurs in the decree only.
NOTES
[1] See State v. Crosby, 338 So.2d 584 (La. 1976).
[2] There is some confusion over the actual sentences received by the defendant. In any event, the prison terms are concurrent and the longest term is twenty months hard labor.
[3] One concern, as stated most pointedly in United States v. Bedford, 519 F.2d 650 (3rd Cir. 1975), cert. denied 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976), is that:

"If the police were allowed to execute the warrant at leisure, the safeguard of judicial control over the search which the fourth amendment is intended to accomplish would be eviscerated."