461 So.2d 1090 (1984)
STATE of Louisiana
v.
Calvin C. DURAND, Jr.
Nos. KA-2236KA-2238.
Court of Appeal of Louisiana, Fourth Circuit.
December 10, 1984.
Rehearing Denied January 24, 1985.
*1091 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., Maria M. Lazarte, Asst. Dist. Atty., Julia Coley, Law Clerk, New Orleans, for plaintiff-appellee.
Ronald J. Rakosky, New Orleans, for defendant-appellant.
Before SCHOTT, BARRY and CIACCIO, JJ.
BARRY, Judge.
Calvin Durand was charged with possession of marijuana, LSA-R.S. 40:966; possession of cocaine, LSA-R.S. 40:967; and possession of phencyclidine, LSA-R.S. 40:966. Following denial of a motion to suppress, Durand pled guilty to all charges, reserving his right to appeal the denial of his motion.[1] Durand was sentenced to concurrent terms: (1) three months in parish prison, suspended, two years active probation for possession of phencyclidine; (2) eighteen months at hard labor, suspended, two years active probation for possession of marijuana; (3) eighteen months at hard labor, suspended, two years active probation for possession of cocaine. Durand relies on three assignments of error.
On February 3, 1984 Detectives Doucette and Melder applied for a warrant to search 2553 N. Tonti Street, Durand's residence. To support the application, Officer Doucette submitted an affidavit which provided in pertinent part:
On Thursday the 2nd of February, 1984, Narcotics and Drug Abuse Officer Roland Doucette was telephonically contacted by a reliable and confidential informant (Ci) whose information in the past has led to the arrest and conviction of illegal drug traffickers within the Parish of Orleans. The Ci stated that within the past three (3) days he had the occassion (sic) to purchase a small amount of Cocaine ($25.00 bag) for self indulgence from a subject he knew only as "Calvin". He then stated that Calvin further advised him that should he need any additional quantities that more would be avialable *1092 (sic). At that time the Ci terminated the conversation, time noted 5:00 p.m.
Officer Doucette at that time advised Narcotics Officer Edmond Melder of the afore-mentioned conversation, at which time they decided to conduct a surveillance at 2553 North Tonti Street. Useing (sic) an unmarked surveillance vehicle the Officers arrived at an unrestricted vantage point and with the use of field glasses the following action was observed.
At approximately 6:00 p.m. the same day two black subjects arrived at 2553 N. Tonti St. and knocked on the front door. Within minutes the door opened at which time a short conversation ensude (sic) between the three (3) subjects with one of the subjects reaching into his right front pants pocket and retrieving an undetermined amount of U.S. Currency which he handed to the subject who stood inside the door. At that time the door was closed with the two (2) visiting subjects left standing outside the residence, and after about five minutes the door reopened with the subject inside the door handing an unknown object to the visiting subject who had previously gave (sic) him the aforementioned currency. With the visiting subject placing the object in the area of his right rear pants pocket, both subject (sic) decended (sic) the steps and walked off in an uptown direction on N. Tonti St. out of the officer (sic) line of vision.
At about 6:15 p.m. another black male arrived at the location and peered about the area as if to determin (sic) whether or not his actions were being observed, apparently satisfied the subject ascended the steps and knocked on the door several times. Moments later the door reopened and at which (sic) time the two (2) subjects engaged in a short conversation with the visiting subject left standing on the front porch. Within minutes the door reopened at which time the visiting subject reached into his top shirt an (sic) retrieved an undetermin (sic) amount of U.S. Currency which he handed to the subject inside the door while simultaineously (sic) recieving (sic) an unknown object which he examined very quickly then placed in the area of his right sock. The subject then walked off in an uptown direction then out of the Officers line of vision.
At about 6:45 p.m. a black female approached the residence at 2553 N. Tonti Street and knocked on the door. Moments later the door once again opened only this time the female went inside the residence and about 10 minutes later the (sic) she exited the residence and walked off in an uptown direction out of the Officers (sic) line of vision.
Based on the affidavit, a search warrant was issued on February 3, 1984 and executed on February 13, 1984. The officers seized $1,100.00, a 12 gauge shotgun, one .22 cal. revolver, one .25 cal. automatic, and various quantities of marijuana, cocaine, and phencyclidine. The defendant was present at the time of the seizure and he was arrested.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the delay in execution of the search warrant violated the proscription of LSA-C.Cr.P. Art. 163, rendering the seizure illegal.
The search warrant was issued on February 3, 1984 at 6:00 p.m. and executed on February 13, 1984 at 8:00 p.m. Defendant argues that the tenth day following issuance of the warrant expired at 6:00 p.m. on February 13, 1984 which made the search untimely and illegal.
LSA-C.Cr.P. Art. 163 provides, in pertinent part:
A search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance.
We find no interpretation of Art. 163; however, La.C.C.P. Art. 5059[2] (as to civil *1093 matters) has been construed to mean whole days and not parts or fractions. Lowe v. O'Meara, 482 F.2d 1373 (5th Cir.1973); McIntire v. Carpenter, 202 So.2d 297 (La. App. 4th Cir.1967). Although civil procedure is not dispositive here, we find it logically persuasive. C.C.P. Art. 5059 is identical to C.Cr.P. Art. 13 which provides for computation of time in criminal proceedings.
We hold the phrase "expiration of the tenth day" means ten full days, until midnight, beginning the day "after its issuance" to execute the warrant. This interpretation is consistent with C.Cr.P. Art. 2 which mandates that the code of criminal procedure be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable delay. Our holding is compatible with Fourth Amendment jurisprudence regarding staleness of warrants which has provided the use of reasonableness and common sense. United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant maintains the information in the affidavit failed to establish probable cause for issuance of the search warrant.
State v. Rodrigue, 437 So.2d 830 (La. 1983), set forth the standard for appellate review of probable cause determinations:
Furthermore, this case involves the review of a magistrate's determination of probable cause prior to issuing the warrant. Such a determination is entitled to significant deference by reviewing courts. Spinelli v. United States, 393 U.S. 410 [89 S.Ct. 584, 21 L.Ed.2d 637] (1969). As the Supreme Court stated in Gates [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527], "after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review." 462 U.S. at ___, 103 S.Ct. at 2331. Additionally, because of "the preference to be accorded to warrants", marginal cases should be resolved in favor of a finding that the issuing magistrate's judgment was reasonable. United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). LSA-C.Cr.P. Art. 162 provides in part:
A search warrant may issue only upon probable cause established to the satisfaction of the judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant.
Probable cause exists when the facts and circumstances within the affiant's knowledge, of which he has reasonably trustworthy information, are sufficient to justify a man of reasonable caution to believe that an offense has been committed. State v. Manso, 449 So.2d 480 (La. 1984); State v. Bruno, 427 So.2d 1174 (La. 1983). The determination of probable cause does not involve certainties or proof beyond a reasonable doubt, or even a prima facie showing, but rather involves probabilities of human behavior, as understood by persons trained in law enforcement and based on the totality of circumstances. State v. Rodrique, supra.
In Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the U.S. Supreme Court stated that in determining probable cause the magistrate is to apply a "totality of the circumstances" analysis:
The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband ... will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud [ing] that probable cause existed."
*1094 The affidavit in this case describes a drug transaction based upon participation by an informant known to be reliable due to past information. The informant's credibility was strengthened by a declaration against penal interest.[3]U.S. v. Harris, 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); State v. Mena, 399 So.2d 149 (La. 1981); State v. Ogden, 391 So.2d 434 (La. 1980). Within a period of 45 minutes, the affiants observed at least two incidents (possibly three) consistent with drug trafficking. The corroborating surveillance by the officers established reasonable ground to believe that the reported drug activity was continuing from 2553 N. Tonti Street.
Based on the totality of these circumstances, a practical common-sense conclusion would recognize a "fair probability" that contraband would be found at defendant's residence. State v. Manso, supra. Defendant maintains, nevertheless, that the affidavit is insufficient because it contains no recitation from the informant identifying the place to be searched.
Although the affidavit did not specify that cocaine would be found at 2553 N. Tonti Street, the Fourth Amendment does not make such a requirement necessary. "All that is required is that the affidavit, interpreted in a commonsense and realistic manner, contain information which would warrant a person of reasonable caution to believe that the articles sought are located at the place to be searched." State v. Mena, supra at 152; State v. Baker, 389 So.2d 1289 (La.1980); State v. Guidry, 388 So.2d 797 (La.1980); State v. St. Hill, 433 So.2d 395 (La.App. 4th Cir.1983).
The informant telephoned police about a drug transaction with defendant. The police immediately conducted a surveillance of 2553 N. Tonti Street and observed several incidents consistent with drug trafficking. There is no indication the officers knew defendant or where he resided. The only logical inference is that the informant told the officers where defendant was selling drugs and they simply neglected to include that fact in the affidavit.
In United States v. Ventresca, supra, the U.S. Supreme Court pointed out that affidavits are normally drafted by nonlawyers in the midst and haste of a criminal investigation. As a result, technical requirements of elaborate specificity are not necessary.
Affidavits, by their nature, are brief and some factual details will inevitably be omitted. Unless the omission is willful and calculated to conceal information that would indicate that there is no probable cause or that the source of other factual information in the affidavit is tainted, the omission will not convert a good warrant into a defective one. State v. Roubique, 421 So.2d 859 (La.1982). The address omission cannot be construed as a malicious or intentional misrepresentation by the affiant.
Using a common-sense approach, we find that it was reasonable for the magistrate to infer that the informant obtained his cocaine from defendant at 2553 N. Tonti Street, and that this information was conveyed by the informant to police, but inadvertently omitted from the affidavit. Furthermore, we are satisfied the search warrant contained, in addition to the informant's tip, sufficient allegations of other facts gained in the surveillance to enable a neutral and detached magistrate to conclude probable cause existed to believe illegal drugs were present in defendant's residence.
The trial court's finding of probable cause and its refusal to suppress the evidence were not an abuse of its discretion.
This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the delay in execution of the warrant rendered the information in the supporting affidavit stale and invalid. In other words, there was no probable cause to believe the contraband would be found on February 13, 1984 after the warrant was issued on February 3, 1984.
*1095 The Louisiana Supreme Court has recognized that the validity of a warrant may be affected by the passage of time. "Thus, included in the general concept of probable cause is the necessary element of a reasonable belief that the contraband or evidence will not have been disposed of but will remain at the place to be searched at the time of the proposed search." State v. Lewis, 385 So.2d 226, 229 (La. 1980); State v. Boneventure, 374 So.2d 1238 (La.1979); State v. Thompson, 354 So.2d 513 (La. 1978). Whether an affidavit establishes probable cause on the date of execution depends upon the facts and circumstances of each case. State v. Bruno, 427 So.2d 1174 (La.1983); State v. Barber, 445 So.2d 463 (La.App. 4th Cir.1984), writ denied, 446 So.2d 1224 (La.1984).
In State v. Bruno, supra, a case similar to this one, the Court upheld the search warrant against a staleness claim. There a confidential informant purchased narcotics from the defendant at his residence. Before the informant left, he was told by the defendant that more PCP and marijuana would be available at a later date. Officers then investigated the scene and observed suspicious activity consistent with drug distribution. The warrant was issued but was not executed until seven days later. In upholding the validity of the warrant, the Supreme Court found that the recited facts were sufficient to warrant a man of reasonable caution to believe that controlled dangerous substances would be found on the premises one week after the issuance of the warrant.
Here the informant purchased a quantity of cocaine from "Calvin" and was told "should he need any additional quantities that more would be available." A surveillance was conducted that same day which revealed at least two (possibly three) incidents consistent with drug trafficking. As in Bruno, the facts indicate ongoing, drug-related activity in the premises to be searched. Using a common-sense interpretation of these facts, we find that a man of reasonable caution could have reasonably believed that drugs would be found in the premises ten days after issuance of the warrant.
This assignment is without merit.

ERRORS PATENT REVIEW
A review of the record for errors patent reveals none.
The motion to suppress was properly denied. Defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] State v. Crosby, 338 So.2d 584 (La. 1976).
[2] LSA-C.C.P. Art. 5059 provides in part:

In computing a period of time allowed or prescribed by law or by order of court, the date of the act, event, or default after which the period begins to run is not to be included. The last day of the period is to be included, unless it is a legal holiday, in which event the period runs until the end of the next day which is not a legal holiday.
[3] The informant admitted to the purchase of a small amount of cocaine from "Calvin."