572 So.2d 117 (1990)
STATE of Louisiana
v.
Rodney A. REVERE.
No. KA 89 1561.
Court of Appeal of Louisiana, First Circuit.
October 16, 1990.
Rehearing Denied January 18, 1991.
*123 William R. Campbell, Jr., New Orleans, David J. Knight, Asst. Dist. Atty., Covington, for the State of La.
George C. Ehmig, Covington, for Revere.
Before EDWARDS, WATKINS and LeBLANC, JJ.
LeBLANC, Judge.
The defendant, Rodney A. Revere, was charged by grand jury indictment with second degree murder, in violation of LSA-R.S. 14:30.1. He pled not guilty and, after trial by jury, was found guilty as charged. He received the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant has appealed, alleging eighteen assignments of error, as follows:
1. The trial court erred in denying the defendant's motion to quash.
2. The trial court erred in allowing a State witness to remain in the courtroom during the hearing on the motion to suppress.
3. The trial court erred in denying the defendant's motion to suppress physical evidence.
4. The trial court erred in denying the defendant's motion to suppress physical evidence.
5. The trial court erred in denying the defendant's motion to suppress physical evidence.
6. The trial court erred in denying the defendant's motion to suppress physical evidence.
7. The trial court erred in denying the defendant's motion to suppress physical evidence.
8. The trial court erred in ruling that the defendant was not entitled to pretrial discovery of several drawings of the defendant's property and the area where the victim's body was found.
9. The trial court erred in denying the defendant's request for grand jury testimony.
10. The trial court erred in restricting the defendant's cross-examination of two State witnesses.
11. The trial court erred in allowing the prosecutor to object to the testimony of his own witness.
12. The trial court erred in allowing the State to introduce hearsay evidence over defense objections.
13. The trial court erred in allowing the prosecutor to ask a leading question of a State witness.
14. The trial court erred in allowing a lay witness to give opinion testimony over defense objection.
15. The trial court erred in ruling that the defense could not introduce evidence relative to previous threats made upon the victim by one of the State's witnesses.
16. The trial court erred in ruling that the defense could not introduce evidence of sexual spying by one of the State's witnesses.
17. The trial court erred in denying the defendant's supplemental motion for a new trial.
18. Due to error patent on the face of the record, the conviction and sentence must be reversed.

FACTS
On Sunday afternoon, May 17, 1987, the victim, Jean Revere, disappeared from her home in St. Tammany Parish. That evening, her sixteen year old daughter by a former marriage, Virginia (Jenny) Pope, became concerned about her mother's absence and telephoned her aunt, the victim's *124 sister, Margaret McLemore. The authorities were notified of a missing person, and a search for the victim began.
The victim had recently filed a petition for legal separation from her husband, the defendant. As a result of their marital problems, the defendant had moved into a residence at the front of the Revere property called the "red barn" residence, where the victim's father, John Fishel, lived. The victim and her daughter were living in the main residence, located behind the red barn residence. A tenant lived in the rent house located at the back of their property.
On Monday, May 18, as numerous friends, relatives, and law enforcement personnel searched for the victim, Mr. Fishel returned from a vacation on the Mississippi Gulf Coast. Shortly after he returned to the red barn residence, he discovered an acid-soaked towel and a portion of carpet which had holes in it. The holes in the carpet and the towel were covered by a small rug. Mr. Fishel immediately reported this discovery to St. Tammany Parish Sheriff's Detective Guy LeBlanc. Another detective, Timothy Lentz, had discovered scratches on the mirrors of the defendant's pickup truck. It appeared as if the truck had recently been driven into the woods. When Detective Lentz observed the bed of the pickup truck, he noticed what appeared to be a blood stain on the tailgate. He also noticed that the rear portion of the truck bed appeared to have been hosed clean. After talking to Detective LeBlanc about the improprieties inside the red barn residence, Detective Lentz obtained a search warrant for the defendant's truck. The truck was seized, transported to the St. Tammany Parish Sheriff's Office, and searched.
On Wednesday, May 20, the victim's body was located in a wooded area several miles from her home. The victim had been shot once in the head. Her body was wrapped in a green blanket from the red barn residence. A plaster cast (State Exhibit 18) of a truck tire print from the trail leading to the victim's body was made. At the autopsy, a .38 caliber bullet was removed from the victim's skull. The following day, Thursday, May 21, a search of the undercarriage of the defendant's truck revealed pine bark, leaves, twigs, and grass, which findings were consistent with the area where the victim's body was found. The victim's .38 caliber pistol was never located, although the box in which it was usually contained was later discovered inside the victim's car by her sister.
A test of the smear on the defendant's truck tailgate revealed that it was not blood. The carpet from the red barn residence contained human blood, but it could not be typed due to the acid contamination. Although the defendant had purchased new tires for his truck on May 18, his former tires (which were in good condition) had been found alongside U.S. Highway 190 in Tangipahoa Parish. The plaster cast (State Exhibit 18) of the tire print matched one of the discarded tires which had been on the defendant's truck at the time of the victim's disappearance. It was later discovered that the defendant had been transferring assets from the marriage into separate bank accounts in his name.
At the trial, the State presented the testimony of thirty witnesses and introduced numerous items of physical evidence. Sixteen witnesses testified for the defense, although the defendant did not take the stand. At the conclusion of this five day trial, a unanimous jury found the defendant guilty of second degree murder.

ASSIGNMENT OF ERROR NUMBER ONE:
In this assignment of error, the defendant contends that the trial court erred in denying his motions to quash the grand jury indictment. Before trial, the defendant filed a motion to quash, and a supplemental motion to quash, the grand jury indictment based on numerous allegations of violations of La.C.Cr.P. art. 401, et seq. After a hearing, the trial court denied the motions.
In his brief to this Court, the defendant argues that there were numerous areas of non-compliance with the Code of Criminal Procedure in the grand jury selection process, including improper service of process to jury commissioners, improper *125 mailing of notice to venire members, and failure to seal envelopes and lock them in a box. He also points to a lack of evidence of the appointment of, and oath taken by, jury commissioners. Based on these allegations, the defendant contends that the entire grand jury selection process was so defective that the indictment returned against him did not legally exist.
However, La.C.Cr.P. art. 419 A provides:
A general venire, grand jury venire, or petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race.
The defendant has the burden of proving fraud or some irreparable injury. State v. Robertson, 464 So.2d 760, 764 (La.App. 1st Cir.1984), writ denied, 467 So.2d 534 (La. 1985). Additionally, an attack upon a grand jury venire based upon insignificant technicalities or irregularities will not be sustained. See State v. Brown, 395 So.2d 1301, 1306 (La.1981). As the trial court noted in denying the motions to quash, there was absolutely no evidence of fraud. Furthermore, we disagree with the defendant's argument that the alleged deficiencies in the grand jury's selection process were so serious that the indictment itself was invalid. Therefore, we find that the defendant has also failed to prove some irreparable injury due to these alleged deficiencies in the grand jury selection process.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER TWO:
In this assignment of error, the defendant contends that the trial court erred in permitting Guy LeBlanc, a former detective with the St. Tammany Parish Sheriff's Office, to remain in the courtroom as the State's representative during the hearing on the defendant's motions to suppress.
The purpose of sequestration is to assure that a witness will testify as to his own knowledge of the events, to prevent the testimony of one from influencing the testimony of others, and to strengthen the role of cross-examination in developing facts. State v. Marchese, 430 So.2d 1303, 1306 (La.App. 1st. Cir.1983). The resolution of sequestration problems is within the sound discretion of the trial court. See State v. Nolan, 457 So.2d 1246, 1248 (La. App. 1st Cir.), writ denied, 462 So.2d 190 (La.1984). On appeal, the reviewing court will look at the facts of each case to determine whether or not a sequestration violation resulted in prejudice to the accused. State v. Ardoin, 340 So.2d 1362, 1363 (La. 1976).
La.C.Cr.P. art. 764 formerly provided:[1]
A. Upon its own motion the court may, and upon request of the state or the defendant the court shall, order that the *126 witnesses be excluded from the courtroom or from where they can see or hear the proceedings and refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel. The court may modify its order in the interest of justice.
B. This Article shall authorize the exclusion of all witnesses except the defendant and one officer or employee of the state who is designated as its representative for the entire trial by the district attorney. This officer or employee of the state shall refrain from discussing the facts of the case or the testimony of any witness with anyone other than the district attorney or defense counsel.
The defendant contends that the trial court's ruling, allowing former Detective LeBlanc to be exempted from sequestration as the State's representative, was based on the fact that Detective LeBlanc was the "case agent" when later trial testimony suggested that someone else was apparently in charge of the instant murder investigation. However, Article 764 allowed the State to choose a representative and did not require the State's representative to be a "case agent." Detective LeBlanc's testimony at the motion to suppress hearing and at trial indicated that he was significantly involved in the instant investigation, both before and after the victim's body was discovered. Given the complicated nature of this case and the numerous items of physical evidence introduced herein, the State's choice of Detective LeBlanc as its representative at the motion to suppress hearing was entirely reasonable. Furthermore, the fact that Guy LeBlanc had recently left the St. Tammany Parish Sheriff's Office was not a bar to his being designated as the State's representative.
The defendant contends it is possible that Detective LeBlanc violated the sequestration order by conferring with other State witnesses. However, this contention is mere speculation by the defendant; and there is no such evidence from the record that Detective LeBlanc engaged in such conduct. The more serious argument advanced by the defendant is that, since the trial court granted the State's request to allow Detective LeBlanc to remain at the prosecution table throughout the hearing, Detective LeBlanc's testimony could have been influenced by the testimony of other witnesses. In order to further address this possibility, an explanation of the motion to suppress hearing is required.
The defendant challenged numerous items of physical evidence in his motions to suppress. Because of the number of items of evidence and the various grounds for challenging them, the trial court requested that the State and the defense develop categories based on the ground for the challenge and the items included under each ground. The categories were listed as follows: (1) abandoned property; (2) evidence seized pursuant to Mr. Fishel's consent to search the red house; (3 A) items seized pursuant to a search warrant for the defendant's truck; (3 B) items seized pursuant to a search warrant of the red house; (4) items seized without a warrant; and (5) items seized by third parties. The trial court considered each category of evidence separately.
Detective LeBlanc was called to testify eight separate times during the motion to suppress hearing. On the first occasion, his testimony related only to whether or not he should be appointed as the State's representative pursuant to Article 764 B. The record reflects that, on four occasions when Detective LeBlanc testified, he was the first, or the only, witness to testify about the seizure of evidence in that particular category. On one occasion, when Detective LeBlanc was called to testify in connection with Mr. Fishel's consent to search the red house (category 2), he was not the first witness to testify under this category. Yet, the subject matter about which he was called to testify by the defense (the note written to Mr. Fishel by the victim) was a new issue which had not been addressed by the testimony of the previous witnesses under this category and, therefore, Detective LeBlanc's testimony about the note could not possibly have been influenced by the testimony of the previous witnesses.
*127 Finally, on two occasions, Detective LeBlanc was questioned in connection with the seizure of evidence by third persons (category 5). Mrs. Stein and Mrs. McLemore testified prior to Detective LeBlanc's testimony about these items of evidence. Thereafter, Mrs. Schall testified, followed again by Detective LeBlanc. Therefore, it is possible that Detective LeBlanc's testimony on these items of evidence could have been influenced by the testimony of Mrs. Stein, Mrs. McLemore, and Mrs. Schall. Yet, for the reasons which follow, we conclude that any error resulting from Detective LeBlanc being questioned after these witnesses did not result in prejudice to the defendant. Such a conclusion is mandated when considering the items of physical evidence introduced at trial which were obtained under category 5 (items seized by third persons). The only items of physical evidence introduced at trial which had been seized by third persons were the victim's letter to her father (State Exhibit 22) and the victim's gun box (State Exhibit 23). The testimony adduced at the motion to suppress hearing clearly indicates that Mrs. Stein and Mrs. McLemore acted on their own initiative in opening the victim's letter, reading it, and giving it to the law enforcement officers. While it seems that Mrs. McLemore located the gun box pursuant to a specific request therefor by law enforcement officers, the empty gun box itself was of little or no evidentiary value and, therefore, its introduction into evidence at the trial did not prejudice the defendant. Moreover, the defendant has no standing to challenge the seizure of the letter and the gun box. These items belonged to the victim and were seized after her death. Because the defendant had no interest in these items of evidence, and the victim's rights were not violated, he could not challenge their alleged improper seizure by third persons. (See the discussion of assignment of error no. six.) Therefore, we find that the majority of Detective LeBlanc's testimony at the motion to suppress hearing could not have been influenced by the testimony of other witnesses, and that, in those areas where his testimony could have been so influenced, the defendant could not possibly have been prejudiced thereby.
For the above reasons, this assignment of error is meritless.
ASSIGNMENTS OF ERROR NUMBERS THREE, FOUR, FIVE, SIX, AND SEVEN:
In these assignments of error, the defendant contends that the trial court erred in denying his motions to suppress physical evidence. Before trial, the defendant filed three motions to suppress. The hearing on these motions was conducted on March 10, 1988. As noted in the previous assignment of error, the various items of physical evidence were classified in separate categories, as follows: (1) abandoned property; (2) items seized pursuant to a consent to search; (3 A) items seized pursuant to a search warrant for the defendant's truck; (3 B) items seized pursuant to a search warrant for the red house; (4) items seized without a warrant; and (5) items seized by third persons. At the hearing, each category of evidence was considered separately. The trial court ruled on some of the items of evidence at the hearing and took other items of evidence under advisement. The following assignments of error relate to the trial court's rulings on the various items of evidence.

Items seized pursuant to a search warrant for the defendant's truck (category 3 A)
The defendant contends that the trial court erred in failing to suppress various items seized from his truck pursuant to a search warrant. Specifically, in assignment of error number seven, the defendant contends that all of the items seized from his truck should have been suppressed because the search warrant was issued without probable cause. Additionally, in assignment of error number three, the defendant contends that the search warrant for his truck was terminated on May 19 after the first set of items was seized from the truck and a return made thereon. Accordingly, he contends that any items seized from his truck after May 19 should have been suppressed.
*128 A search warrant may issue only upon probable cause established to the satisfaction of a judge, by the affidavit of a credible person, reciting facts establishing the cause for issuance of the warrant. La. Const. Art. I, § 5; La.C.Cr.P. art. 162. Probable cause exists when the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched. State v. Tilley, 525 So.2d 716, 718 (La.App. 1st Cir.1988).
Normally, the law does not permit a reviewing court to go outside the four corners of a search warrant affidavit in reviewing a probable cause determination. However, where there are inadvertent material omissions, the reviewing court will look to outside evidence to support or destroy a probable cause finding. State v. Addison, 551 So.2d 687, 692 (La.App. 1st Cir.1989).
The defendant contends that the search warrant for his truck was invalid because the affidavit failed to show probable cause on its face. The search warrant was introduced into evidence at the motion to suppress hearing as State Exhibit 5. The search warrant affidavit contained the following information: (1) at 8:25 p.m. on May 17, 1987, the St. Tammany Parish Sheriff's Office received a call that the victim was missing; (2) an investigation revealed that the defendant and the victim were in the process of a divorce; (3) at noon on May 18, the victim had not been located; (4) the truck described in the search warrant belonged to the defendant; (5) the outside mirror of the truck was scratched in such a manner that it appeared to have recently been driven through the woods; (6) there was a smear of what appeared to be blood on the tailgate of the truck; and (7) the rear of the truck bed had recently been hosed clean. The search warrant was obtained by Detective Tim Lentz of the St. Tammany Parish Sheriff's Office. Referring to Detective Lentz's testimony at the motion to suppress, the defendant concluded that there was no probable cause to issue the search warrant because the victim had not been found, the authorities had no reason to believe that a crime had been committed, and there was no reason to suspect the defendant. Considering the face of the search warrant affidavit in light of the defendant's argument, a determination of probable cause is indeed difficult. However, Detective Lentz's motion to suppress testimony indicated that he omitted a key fact from the affidavit which would, taken with the other facts, clearly support a determination of probable cause. The testimony of Mr. Fishel and Detective LeBlanc at the motion to suppress hearing indicated that, between 10:00 a.m. and 11:00 a.m. on May 18, Mr. Fishel discovered the acid burned towel and holes in the carpet which were covered by a rug. Since Mr. Fishel had been out of town, the defendant was the only occupant of the red house over the weekend. The discovery of the acid burned holes in the carpet suggested foul play and focused the investigation on the defendant. Detective Lentz's testimony indicated that he had spoken with Detective LeBlanc about the holes in the carpet and Detective LeBlanc had concluded that foul play might be involved. This conversation occurred before Detective Lentz obtained the search warrant. Given the importance of this amended information, we can only conclude that such an omission from the affidavit was inadvertent. Therefore, when considering this omitted information together with the facts in the affidavit, we conclude that there was probable cause to issue this search warrant for the defendant's truck.
In any event, even if there was insufficient information to support a finding of probable cause, we conclude that the "good faith" exception to the exclusionary rule announced in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), would apply herein. See State v. Shannon, 472 So.2d 286, 290-291 (La.App. 1st Cir.), writ denied, 476 So.2d 349 (La. 1985). For the above reasons, we find assignment of error number seven to be meritless.
*129 We now consider the defendant's argument, under assignment of error number three, that subsequent searches and seizures of evidence from the defendant's truck were conducted without a warrant and, therefore, the items of evidence seized therein should have been suppressed. Pursuant to the search warrant, the defendant's truck was seized at approximately 1:30 p.m. on May 18. It was taken to the St. Tammany Parish Sheriff's Office Maintenance Barn. The record is unclear as to whether or not the first search and seizure of evidence from the truck took place on May 18 or May 19. Detective Lentz made a return of search warrant on May 19, indicating that several items were removed from the truck and a scraping was made of the smear on the tailgate. On the next day, Wednesday, May 20, the victim's body was found. At approximately 3:00 p.m. on Thursday, May 21, Detective Lentz returned to the truck and recovered the items in State Exhibit 10 (pinebark, leaves, twigs, grass, etc.) from underneath the defendant's truck. Other items were seized from the truck on May 27, 1987, and October 9, 1987. At the motion to suppress hearing, Detective Lentz testified that the only return of search warrant made was for the items seized in the first search on May 18 or May 19. Detective Lentz specifically testified that he did not feel it necessary to obtain another search warrant for the subsequent searches of the truck or to make a return for evidence seized in the subsequent searches. The defendant contends that the return of search warrant made by Detective Lentz after the first search and seizure of items from the truck terminated the search warrant and, therefore, all other items seized from the truck were seized without a warrant and should have been suppressed. Initially, we note that our consideration of this assignment of error is limited to the items of evidence seized from the defendant's truck which were subsequently introduced at trial. Any error in failing to suppress items of evidence is harmless if the items are not introduced at trial. State v. Edwards, 351 So.2d 500, 504 (La.1977); State v. Foster, 437 So.2d 309, 315 (La.App. 2d Cir.1983). Therefore, our consideration of this assignment of error is limited to the May 21, 1987, seizure of items from underneath the defendant's truck (State Exhibit 10) because the remaining items seized from the defendant's truck were not introduced into evidence at the trial.
The validity of a search warrant can be affected by the passage of time. State v. Bruno, 427 So.2d 1174, 1177 (La. 1983). La.C.Cr.P. art. 163 provides that a search warrant cannot be lawfully executed after the expiration of the tenth day after its issuance. Therefore, evidence must be suppressed if seized pursuant to a search warrant executed later than ten days following its issuance. State v. Bruno, 427 So.2d at 1177. A peace officer who seizes property under a warrant shall give a receipt to the person from whom the property was taken. La.C.Cr.P. art. 166. When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. La.C.Cr.P. art. 167.
Considering the facts and circumstances of the instant case, we find that the seizure and storage of the defendant's vehicle was reasonable. See State v. Paster, 373 So.2d 170, 175 n. 3 (La.1979). The testimony of Detective Lentz indicates that the vehicle was sealed in clear plastic and evidence tape. In fact, it appears that the truck was seized and secured; the defendant was forced to file a motion for the release of the truck. The defendant cites no authority for his argument that the search warrant for his truck terminated when Detective Lentz made the return for the items seized in the first search on May 18 or 19. Because the search and seizure of items in State Exhibit 10 took place on May 21, three days after the issuance of the search warrant, there was no violation of Article 163. Although the defendant was not given a receipt for the items seized in State Exhibit 10, and the defendant's truck was retained by the Sheriff's Office rather than the judge, we conclude that these violations of Articles 166 and 167 did not have any effect on the time limitation for execution of the search warrant. Furthermore, *130 Articles 166 and 167 do not afford any constitutional protections; and the violation of these articles did not result in any prejudice to the defendant. See State v. Square, 257 La. 743, 244 So.2d 200, 224 (1971), sentence vacated on other grounds, 408 U.S. 938, 92 S.Ct. 2871, 33 L.Ed.2d 760 (1972); State v. Wise, 434 So.2d 1308, 1312 (La.App. 3d Cir.1983).
For the above reasons, we conclude that the seizure of the items in State Exhibit 10 was made under a valid search warrant which had not terminated upon the earlier return made by Detective Lentz. Furthermore, even assuming, arguendo, that the earlier return by Detective Lentz did terminate the search warrant, the items in State Exhibit 10 were properly admitted at trial under the "good faith" Leon exception to the exclusionary rule. Even if the earlier return terminated the search warrant, Detective Lentz's testimony at the motion to suppress hearing clearly indicated that he did not believe it necessary to secure a second search warrant before searching the truck on May 21, nor did he believe it necessary to make a return for the items in State Exhibit 10. Accordingly, we find assignment of error number three to be meritless.

Items seized without a warrant (category 4)
In assignment of error number four, the defendant contends that the trial court erred in failing to suppress a plaster cast of a truck tire taken from the defendant's property without a search warrant. This plaster cast, labeled S-49 Q-4 at the motion to suppress hearing, was in fact suppressed by the trial court and was not introduced into evidence at trial. Accordingly, this assignment of error is meritless.

Items seized from the red house with Mr. Fishel's consent (category 2)
In assignment of error number five, the defendant contends that the trial court erred in failing to suppress items seized from the red house pursuant to a consent to search from the victim's father, John Fishel.
A valid consent search is a well-recognized exception to the warrant requirement. Consent is valid when it is freely and voluntarily given by a person who possesses common authority or other sufficient relationship to the premises or effects sought to be inspected. State v. Price, 476 So.2d 989, 991 (La.App. 1st Cir. 1985). The consent of one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared. State v. Price, 476 So.2d at 992.
There is no question that Mr. Fishel freely and voluntarily signed a consent to search the red house on Monday, May 18, 1987. At the motion to suppress hearing, this consent to search form was introduced into evidence as State Exhibit 2. The only question presented herein is whether or not Mr. Fishel had the authority to consent to such a search. The defendant contends that Mr. Fishel's occupancy of the red house "was being terminated."
In order to understand the defendant's argument, a description of the Revere property is necessary. The defendant and the victim owned approximately ten acres. The first residence at the front of the property was known as the "red house" or the "red barn residence." Behind the "red house" was the main residence. At the back of the property, near the river, was a rent house occupied by a tenant. Before the marriage difficulties began, the defendant, the victim, and Jenny Pope lived in the main residence. The victim's father, Mr. Fishel, lived in the red house. However, when these marital problems began, the defendant moved into the red house with Mr. Fishel. Apparently, there was a plan that notice to vacate the rent house would be given to the tenant. When the tenant left, the defendant would move into the rent house. The defendant contends that another aspect of the plan for new living arrangements was that Mr. Fishel was supposed to move into the main residence until the defendant moved into the rent house. As evidence of this plan, the defendant points to the letter written by the victim to Mr. Fishel. (State Exhibit 22). *131 On this basis, the defendant contends that Mr. Fishel had been evicted from the red house and had no authority to consent to a search thereof. He also contends that Detective LeBlanc, who secured the consent to search from Mr. Fishel, knew that Mr. Fishel's occupancy thereof had been terminated.
We have reviewed all of the relevant motion to suppress and trial testimony relating to the question of the living arrangements at the time of the victim's death.[2] We conclude that, although there might have been a plan for Mr. Fishel to move into the main residence, leaving the defendant as the sole occupant of the red house, this plan was not put into effect due to the victim's death. At the time of her death, both the defendant and Mr. Fishel were living in the red house. On May 18, when Mr. Fishel returned from his vacation, he returned to the red house, where his personal effects were located. Mr. Fishel was still sharing the occupancy of the red house with the defendant at the time he signed the consent to search form. Accordingly, his consent to search was valid; and, therefore, the trial court correctly denied the motion to suppress on this basis.
The only items introduced into evidence at the trial which were secured from the red house pursuant to Mr. Fishel's consent to search were the section of acid-eaten carpet (State Exhibit 15), the rug which covered the holes in the carpet (State Exhibit 16), and the acid-soaked brown towel (State Exhibit 17). We note that a gallon of muriatic acid was seized from the pool house by St. Tammany Sheriff Deputy Terry Piwetz. Because it was not determined at the motion to suppress hearing whether or not Mr. Fishel's authority to consent to a search extended to the pool house, the seizure of the muriatic acid pursuant to Mr. Fishel's consent to search the red house is suspect and possibly should have been suppressed. Nevertheless, as noted above, any error in failing to suppress the muriatic acid was harmless, since it was not introduced into evidence at the trial. State v. Edwards, 351 So.2d at 504; State v. Foster, 437 So.2d at 315.
For the above reasons, this assignment of error is meritless.

Items seized by third persons (category 5)
In assignment of error number six, the defendant contends that the trial court erred in failing to suppress various items seized from the Revere residence by third persons.
The Fourth Amendment of the U.S. Constitution protects against unreasonable searches and seizures. This amendment has been interpreted to protect individuals from unreasonable governmental actions. Its primary purpose is to restrain governmental authorities. It is not intended to protect against private trespasses. State v. Sanchez, 516 So.2d 415, 419 (La.App. 1st Cir.1987), writ denied, 523 So.2d 1334 (La.1988). See also State v. Gentry, 462 So.2d 624, 628-629 (La.1985); State v. Coleman, 466 So.2d 68 (La.App. 2d Cir.), writ denied, 467 So.2d 542 (La.1985).
In the instant case, the defendant contends that third persons were acting as agents of the State when they seized evidence. As previously noted in assignment of error number two, the only items introduced into evidence at the trial which had been seized by third persons were the victim's letter to her father (State Exhibit 22) and the victim's gun box (State Exhibit 23). As noted in assignment of error number two, the letter was discovered, opened, and read by Mrs. Stein and Mrs. McLemore before the authorities began an investigation into the victim's disappearance. Therefore, this letter could not possibly be deemed to be the result of a search and seizure by third persons acting as agents of the State. The gun box was found in the victim's car by her sister, Mrs. McLemore. While it appears that Mrs. McLemore might have found the gun box and given it to Detective LeBlanc pursuant to *132 his specific request that she do so, a finding that she acted as a State agent in this situation does not mandate the suppression of the gun box. The gun box was the personal property of the victim, who was undergoing a separation and divorce from the defendant. It was found in the victim's car after her death. Since the victim's rights could not possibly have been violated by the taking of this item of evidence, even assuming that Mrs. McLemore was acting as a State agent, the defendant had no standing to challenge this seizure.[3] Therefore, we conclude that the trial court correctly denied this portion of the motion to suppress.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER EIGHT:
In this assignment of error, the defendant contends that the trial court erred in ruling that he was not entitled to pretrial discovery of several drawings of the defendant's property and the area where the victim's body was found.
At a pretrial discovery hearing, the defendant requested several sketches of his property and the area where the victim's body was found. The sketches had been prepared by a deputy sheriff. The defendant argued that, pursuant to La.C.Cr.P. art. 718, he was entitled to these drawings if the state intended to use them at trial. However, the prosecutor argued that the sketches were the work product of the State and, therefore, were not subject to discovery. See La.C.Cr.P. art. 723. The trial court agreed with the prosecutor and refused to order production of the sketches unless the defense could cite authority which would persuade it to the contrary. These sketches were subsequently converted into large diagrams and introduced into evidence at trial, over defense objection, as State Exhibits 4, 5, and 6.
At the trial, Sgt. Ronald Frey of the St. Tammany Parish Sheriff's Office testified that the large diagrams were from sketches and measurements he made of the defendant's property and the area where the victim's body was found. Therefore, the trial court correctly ruled that they were not subject to pretrial discovery. State v. Knighton, 436 So.2d 1141, 1150 (La.1983), cert. denied, 465 U.S. 1051, 104 S.Ct. 1330, 79 L.Ed.2d 725 (1984). Furthermore, we note that the defendant made no showing of prejudice resulting from the lack of pretrial disclosure of these items. Surely the defendant was familiar with his own property. As for the sketches of the area where the victim's body was found, the defense was supplied with numerous photographs of this area in pretrial discovery.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER NINE:
In this assignment of error, the defendant contends that the trial court erred in denying his request for grand jury testimony.
Before trial, the defendant filed a motion to make grand jury testimony available to him. At the hearing on this motion, the defendant argued that the victim's civil attorney, Sidney Cox, had been given access to the grand jury testimony and, therefore, the defendant should also be given access to it. The trial court rejected this argument and denied the motion. (R 731-735). In his brief to this Court, the defendant argues that the grand jury testimony was necessary to prepare for cross-examination, and possible impeachment, of Mr. Cox. However, the defendant failed to explain which portion(s) of the grand jury testimony were allegedly reviewed by Mr. Cox.
*133 The general rule is that the proceedings of the grand jury are to be kept secret. La.C.Cr.P. art. 434 A. The purpose of this rule is to encourage the full disclosure of information about crimes. State v. Ates, 418 So.2d 1326, 1329 (La. 1982). The testimony of a witness before the grand jury may not be used in Louisiana for cross-examination, unless the testimony is used to reveal statutory irregularities in grand jury proceedings or to show that a witness committed perjury in his testimony before the grand jury. La.C. Cr.P. art. 434 A; State v. Feet, 481 So.2d 667, 671 (La.App. 1st Cir.1985), writ denied, 484 So.2d 668 (La.1986).
Furthermore, as noted in the State's brief to this Court, Mr. Cox was permitted to discuss his grand jury testimony with the district attorney. La.C.Cr.P. art. 434 A. Under these circumstances, the defendant was not entitled to the grand jury testimony; and the trial court's ruling on this motion was correct.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TEN:
In this assignment of error, the defendant contends that the trial court erred in restricting his cross-examination of two State witnesses. Specifically, he cites seven instances when the trial court restricted his cross-examination of Jenny Pope and another instance when the trial court restricted his cross-examination of Sidney Cox.
The defendant's right to confront and cross-examine witnesses, found in the Sixth Amendment to the United States Constitution, is a fundamental right applicable to the states through the Fourteenth Amendment. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). This right to confrontation is also found in Art. I, § 16, of the Louisiana Constitution. State v. Rankin, 465 So.2d 679, 681 (La. 1985).
It is well-settled law that the defense should be allowed substantial freedom in cross-examining State witnesses. However, such freedom may be restrained by the trial court when the questions asked are irrelevant or immaterial to the case. State v. Mayes, 325 So.2d 591, 592 (La. 1976). La.R.S. 15:435[4] provides that evidence sought to be introduced at trial must be relevant to a material issue. In questions of relevancy, much discretion is vested in the trial court. State v. Andrews, 451 So.2d 175, 178 (La.App. 1st Cir.), writ denied, 457 So.2d 17 (La.1984). Such rulings will not be disturbed on appeal in the absence of a showing of manifest abuse of discretion. State v. Raymond, 447 So.2d 51, 54 (La.App. 1st Cir.), writ denied, 449 So.2d 1347 (La.1984).
La.R.S. 15:275 vests the trial court with "a sound discretion to stop the prolonged, unnecessary and irrelevant examination of a witness." Therefore, a conviction will not be reversed due to the trial court's control of the examination of witnesses unless an abuse of discretion is shown. State v. Savoie, 448 So.2d 129, 134 (La.App. 1st Cir.), writ denied, 449 So.2d 1345 (La.1984). Nor will a conviction be overturned where the defendant does not show that he was prejudiced through a limitation of the cross-examination of a witness. State v. Savoie, 448 So.2d at 134; State v. Brown, 432 So.2d 345, 346 (La. App. 1st Cir.1983).
During defense counsel's cross-examination of Jenny Pope, he attempted to explore what she did on Sunday morning, May 17, 1987. She had previously testified that her friend, Christine Payne, spent the night Saturday night and left at approximately 9:30 a.m. on Sunday. When defense counsel asked her what she did after Miss Payne left, she replied that she went back inside the house. When he asked her to be more specific, the prosecutor objected on the basis of relevance. The trial court asked what relevance this line of questioning *134 had, but defense counsel could not give a specific answer. Thereafter, when defense counsel asked Miss Pope what she did between 9:30 a.m. and noon, the prosecutor again objected; and the trial court sustained this objection. Defense counsel then ascertained from the witness that the last time she heard her mother's voice was in the afternoon, approximately 2:00 p.m. Given this testimony that Miss Pope last heard her mother's voice at approximately 2:00 p.m. on Sunday, we find that the trial court correctly sustained the prosecutor's relevancy objection concerning the line of questioning about Miss Pope's activities earlier that morning.
Next, defense counsel twice attempted to question Miss Pope about statements she allegedly made in the presence of her father and stepmother, Charles and Linda Pope, on Monday, May 18, 1987. Defense counsel attempted to question Miss Pope about an alleged statement to her father on Monday that she wanted one million dollars. He also questioned her about an alleged statement that the excitement and activity of helicopters and law enforcement personnel searching the property made her feel important. While defense counsel's first two attempts to question Miss Pope about these alleged statements were restricted when the trial court sustained relevancy objections made by the prosecutor, defense counsel eventually succeeded in questioning Miss Pope about the alleged statements. She denied making the statement about the helicopters and law enforcement personnel making her feel important. She also explained that the statement about her wanting one million dollars had been taken out of context. Furthermore, defense counsel also questioned Margaret McLemore and Lucia Schall about these statements by Miss Pope.
The obvious implication of these statements was that Miss Pope was more concerned about all the excitement and activity surrounding the search, and about the possibility of personal profit, than she was about the disappearance of her mother. Because defense counsel eventually questioned Miss Pope, Mrs. McLemore, and Mrs. Schall about these statements, any possible error by the trial court in restricting defense counsel's two earlier attempts to do so was harmless. See State v. Clay, 441 So.2d 1227, 1232 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984).
Somewhat connected with the above line of questioning about Miss Pope's statements, defense counsel also questioned her about whether or not she would profit from her mother's death. The prosecutor immediately objected on the basis that the witness was a minor child, and the trial court sustained this objection. Even assuming, arguendo, that this ruling was erroneous, any such error was harmless in light of the fact that defense counsel was subsequently allowed to fully pursue this line of questioning, both with this witness and with other State witnesses.
Shortly after this ruling, defense counsel again questioned Miss Pope about the possibility of financial gain as a result of her mother's death. He specifically questioned her about life insurance proceeds and her mother's estate. She replied that she did not know the answers to these questions. When defense counsel questioned her about a one million dollar lawsuit filed against the defendant on her behalf, the prosecutor objected on the basis that her legal guardian was the proper person to question about this lawsuit. The trial court sustained this objection. Subsequently, defense counsel cross-examined Margaret McLemore, who was Miss Pope's aunt and legal guardian, about the lawsuit, insurance proceeds, and the victim's estate. Therefore, the record indicates that defense counsel successfully pursued this line of questioning.
The defendant contends that the trial court erred in restricting his cross-examination of Miss Pope on the subject of whether or not she was a suspect in the investigation. When defense counsel asked Miss Pope if she had been advised of her Miranda rights by the first detective to investigate the incident, the prosecutor's objection on relevancy grounds was sustained by the trial court. Immediately *135 thereafter, defense counsel asked her if she had ever been told that she was a suspect, to which a similar objection was sustained. Subsequently, when defense counsel asked Miss Pope if she had refused to talk with detectives unless her attorney was present, the trial court again sustained an objection by the prosecutor. We agree with the trial court that this line of questioning was irrelevant. Furthermore, even if this line of questioning was relevant, the proper method of determining whether or not Miss Pope was ever considered a suspect in the investigation would have been to question law enforcement officers on the matter, not Miss Pope herself.
The defendant also contends that the trial court restricted his cross-examination of Miss Pope in regard to whether or not she had made a statement that she hated her mother. Although Miss Pope responded that she might have said that she hated her mother in the course of normal, mother/teenage daughter arguments, defense counsel continued to question her about a specific incident in connection with a Valentine's Day dance on February 14, 1987. At this point, the prosecutor objected on the basis that defense counsel was not following the proper method for impeaching a witness. The trial court sustained this objection.
Whenever the credibility of a witness is to be impeached by proof of a contradictory statement, the witness must first be asked whether or not he has made such a statement, and his attention must be called to the time, place, and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. La.R.S. 15:493; State v. Burge, 515 So.2d 494, 504 (La.App. 1st Cir.1987), writ denied, 532 So.2d 112 (La.1988). Because defense counsel had not laid the proper foundation for impeaching this witness, the trial court properly sustained the objection. In any event, immediately thereafter, defense counsel again questioned Miss Pope about the incident in connection with the Valentine's Day dance. She answered the question and explained the incident. Accordingly, we find no error.
Finally, during the cross-examination of Sidney Cox, the victim's civil attorney, defense counsel questioned Mr. Cox about the language in the petition for a legal separation requesting a temporary restraining order against harassment and threats by the respondent spouse (the defendant). Mr. Cox explained that the victim requested the issuance of a temporary restraining order. At this point, in an attempt to demonstrate that such language in petitions for separation was commonplace and routine, defense counsel attempted to question Mr. Cox about the petition for separation filed by him on behalf of Hildreth Atkins Guy. The prosecutor objected that this petition was irrelevant to the instant case, and the trial court sustained this objection. Defense counsel's further attempts to refer to the Guy petition were met with the same objections, which the trial court sustained. We agree with the trial court that a petition for separation filed by Mr. Cox on behalf of Mrs. Guy had absolutely no relevance to the instant case.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. ELEVEN:
In this assignment of error, the defendant contends that the trial court erred in allowing the State to object to the testimony of its own witness.
At the trial, Malcolm Guidry, a horticulturist, testified as a State expert witness on the identification of leaves. During the direct examination of Mr. Guidry, the prosecutor asked Mr. Guidry if he could describe a piece of evidence contained in State Exhibit 10 (a holly leaf). Mr. Guidry replied that he could do so and began to describe the soil conditions necessary for that type of holly to grow and the geographical locations where such holly would be found. The prosecutor immediately interrupted Mr. Guidry and asked him to describe the leaf itself. At this point, defense counsel objected, noting that Mr. Guidry had the right to explain his answer. The prosecutor noted that Mr. Guidry's answer *136 had not been responsive to the question. The trial court tacitly overruled defense counsel's objection, noting that Mr. Guidry was a State witness and that defense counsel would soon have the opportunity to cross-examine Mr. Guidry.
In his brief to this Court, the defendant mistakenly contends that Mr. Guidry was under cross-examination and that the prosecutor objected to his testimony in an apparent attempt to impeach his own witness. The defendant further contends that such impeachment was improper, since the prosecutor did not show that he was surprised by the testimony or that Mr. Guidry was a hostile witness. See La.R.S. 15:487. However, as noted above, Mr. Guidry was on direct examination. Furthermore, contrary to the defendant's argument, the prosecutor was not attempting to impeach Mr. Guidry. Instead, he was merely attempting to have the witness respond to the question which he had asked. It is obvious from an examination of the record that Mr. Guidry simply misunderstood the question and believed he was supposed to describe the soil conditions and geographical locations of that type of holly, rather than describe the physical characteristics of the holly leaf itself. Under these circumstances, the trial court properly overruled the defendant's objection.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. TWELVE:
In this assignment of error, the defendant contends that the trial court erred in allowing the State to introduce hearsay evidence over defense objection.
At the trial, a friend of the victim, Susan Stein, testified about an incident which took place Friday night, May 8, 1987. She was with the victim at a party when the victim received a phone call from her daughter, Jenny Pope. As a result of the phone call, they left the party early and went to the victim's office to retrieve the home phone number of the victim's attorney. All of these acts were witnessed by Susan Stein and clearly did not constitute hearsay. However, over defense objection, the State was allowed to elicit a statement made by the victim to Mrs. Stein after Miss Pope's phone call. Mrs. Stein testified that the victim informed her that she was upset because the defendant was harassing Miss Pope. The State argued that this statement was admissible to prove the victim's state of mind and, therefore, was an exception to the hearsay rule. However, the defendant argued that the statement was inadmissible hearsay. The trial court allowed the statement into evidence.
In State v. Brown, 562 So.2d 868 (La. 1990), the victim made a statement less than two days before her death that she was not interested in having sexual relations with the defendant. The Louisiana Supreme Court found this statement to be properly admissible as an extrajudicial declaration introduced to prove the declarant's state of mind. The instant case is similar to the situation presented in State v. Brown and, therefore, we find the above statement by the victim to Mrs. Stein might have been admissible as evidence of the victim's state of mind. However, we are unable to decide this issue because the State, while contending that the statement was admissible to prove the victim's state of mind, did not explain why the victim's state of mind was relevant herein. In any event, for the reasons which follow, we conclude that any error in admitting this statement into evidence was harmless beyond a reasonable doubt.
The petition for a legal separation between the victim and the defendant, State Exhibit 32, was identified by Mr. Cox and introduced into evidence at the trial without defense objection. Paragraph 5 B of the petition clearly stated that one of the grounds for separation was the defendant's continued interference with the victim's raising of her daughter from another marriage, Jenny Pope. Paragraph 5 B of the petition for separation essentially accomplished the same result as the introduction into evidence of the statement by the victim to Mrs. Stein, i.e., that the victim was upset by the defendant's treatment of her daughter. Therefore, even assuming, arguendo, that the statement was erroneously admitted hearsay, we find any such error *137 to be harmless. See State v. Byrd, 540 So.2d 1110, 1114 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989).
The defendant also complains of another instance wherein the trial court allowed the introduction of hearsay evidence over his objection. During the testimony of the victim's sister, Lucia Schall, the State introduced into evidence, over the defendant's hearsay objection, State Exhibit 35. This exhibit contains twenty-eight items. Twenty-seven of these items were various financial transactions made by the victim and the defendant. Item number twenty-one, to which the defendant did not object, was a certified copy of a property deed. The remaining twenty-seven items were objected to by the defendant as inadmissible hearsay evidence.
Mrs. Schall testified that she had personally gathered these items as co-administratrix of the victim's estate. These records were from four financial institutions. A large chart containing all of these separate transactions was also introduced into evidence as State Exhibit 36. The custodian of records from each of the four financial institutions testified that these records were compiled in the ordinary course of business, that he or she was in charge of the records, and that each particular copy was identical to the original. Most of these financial records consisted of xerox copies of checks and deposits made and/or endorsed by the defendant and the victim, who were obviously unavailable to testify at the trial. Accordingly, these particular items were properly introduced into evidence pursuant to the business records exception to the hearsay rule. See State v. Monroe, 345 So.2d 1185, 1188-90 (La.1977). See also La.C.E. art. 804 B(5).[5] While some of the financial records were computer printouts of transactions[6] and others were handwritten records of transactions, even if these records were not admissible because of the failure to demonstrate the unavailability of the person who made them (or entered the information into the computer), any error in admitting these particular items into evidence was harmless, given the cumulative and corroborative nature of those records. See State v. Byrd, 540 So.2d at 1114.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NUMBER THIRTEEN:
In this assignment of error, the defendant contends that the trial court erred in allowing the prosecutor to ask a leading question of a State witness.
During the direct examination of Lt. David Bulloch of the St. Tammany Parish Sheriff's Office, the following colloquy occurred:
PROSECUTOR:
Q Did you show those tires to anyone else at Patin's Goodyear Store in Hammond?
A The boy that changed the tires.
Q Do you remember what his name was?
A No, sir, I don't.
Q Would it refresh your memory if I told you
DEFENSE COUNSEL:
I object to leading.
BY THE COURT:
He can refresh his memory on something like that. It's innocuous.
PROSECUTOR:
Q Would it refresh your memory if I told you it was Joey Holley?
A Yes, sir.
Q Did you show him those tires?
A Yes, sir.

*138 Q Did you ask him if he was able to identify them as coming from Rodney Revere's truck?
A Yes, sir.
Q Was he able to idendity (sic) those tires as coming from Rodney Revere's truck?
A Yes, sir.
A leading question, as defined in La.R.S. 15:277, is one which suggests to one's own witness the answer to be delivered when said witness is neither hostile nor unwilling. State v. Collins, 470 So.2d 553, 556 (La.App. 1st Cir.1985). Leading questions are not permissible. Nevertheless, the matter of leading one's own witness is largely within the discretion of the trial court; and only a clear abuse of that discretion which prejudices the defendant's rights will justify the reversal of a conviction. State v. Jones, 439 So.2d 598, 599-600 (La.App. 1st Cir.1983).
In the instant case, Lt. Bulloch was testifying about his role in investigating the truck tires discarded by the defendant. When he could not recall the name of the employee who changed the defendant's tires, the prosecutor clearly asked a leading question which suggested the answer to be given, i.e., the name of this employee. Yet, as the trial court correctly ruled, the question was clearly innocuous. It was merely an attempt to substantiate and/or clarify Lt. Bulloch's prior response that he had talked to an employee whose name he could not recall. See State v. Warren, 536 So.2d 529, 534 (La.App. 1st Cir.1988). The employee, Joey Holley, subsequently testified about changing the defendant's tires. Accordingly, we find no error by the trial court in allowing the prosecutor to ask this leading question.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FOURTEEN:
In this assignment of error, the defendant contends that the trial court erred in permitting a lay witness to give opinion testimony over defendant's objection.
During the direct examination of Mr. Holley, the following colloquy occurred:
PROSECUTOR:
Q Did you do anything in connection with the defendant Rodney Revere or his vehicle on Monday, May 18th, 1987?
A I put some tires on.
Q And what kind of tires did you take off of his truck?
A Power Streak, which is a Goodyear tire.
Q You need to speak up so everybody can hear you now.
A Okay.
Q Do you recall the condition of these tires that you took off of the defendant's truck?
A Yes, sir. Two of them were slightly worn on both the edges, but the two rear tires were in good condition, you know, as far as showing any wear on either side.
Q Did the defendant purchase four new tires that day?
A Yes, sir.
Q Did this strike you as being unusual?
DEFENSE COUNSEL:
I object to that, Your Honor. I don't think that's a proper question for him.
BY THE COURT: I'm going to allow it in. Overruled.
PROSECUTOR:
Q Did this strike you as being unusual?
A Not generally. Maybe he had a reason I didn't know of for changing them.
Q With regard to the condition of his old tires?
A Yes. With the condition of the old tires, it seemed to be no reason to my point.
Q But you don't know what his reason was for doing it?
A No, sir.
Q Do you know what happened to the old tires?
A I put them in the back of the truck.

La.R.S. 15:463 provides:
Except as otherwise provided in this Code, the witness can testify only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.
*139 Generally, a lay witness can only testify to the facts within his knowledge and not to impressions or opinions; however, a witness is permitted to draw reasonable inferences from his personal observations. State v. Johnston, 546 So.2d 1231, 1235 (La.App. 1st Cir.1989). Where the subject of the testimony is such that any person of experience may make a natural inference from observed facts, a lay witness may testify as to such inferences provided he also states the observed facts. State v. Hookfin, 476 So.2d 481, 488 (La. App. 1st Cir.1985).
In the instant case, when asked if he thought it unusual for the defendant to replace such tires, Mr. Holley replied, "[n]ot generally" and explained that perhaps the defendant had a reason for doing so, although he did not know of any reason to replace them. Although Mr. Holley, a lay witness, stated an opinion in this situation, his answer was based on a natural inference from what he personally observed. While changing the defendant's tires, Mr. Holley observed the condition of these tires. He described their condition at the trial before giving this opinion testimony.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. FIFTEEN:
In this assignment of error, the defendant contends that the trial court erred in preventing a defense witness, Betty Pogue, from testifying about an incident which occurred in October of 1986. Specifically, the trial court refused to allow Ms. Pogue to testify about an alleged harassment of the victim during an October 22-24, 1986, Louisiana Nurses Convention at the Holiday Inn in Covington.
In his brief to this Court, the defendant contends:
"[Betty Pogue] was called to testify that, during the three day convention, Paul Pierre had constantly followed and harassed Jean Revere around the convention site, so much so that Mrs. Revere was fearful of her safety and called the authorities to put a halt to the situation. She was also to testify that, only a couple of weeks prior to her death, Jean Revere had been followed around the North Shore Mall in Slidell by the same man. Upon the lodging of an objection by the state, the court refused to allow Mrs. Pogue to testify, saying that the incident was too remote." (Defendant's brief p. 26)
State witness Paul Pierre was a special and reserve deputy with the Tangipahoa Parish Sheriff's Office. As the defense notes in its brief to this Court, Deputy Pierre played a key role in the investigation of this case. He found the victim's body. He also discovered the tires (State Exhibit 26) discarded by the defendant. During the cross-examination of Deputy Pierre, defense counsel asked him if he had known the victim; and Deputy Pierre replied that he did not. Defense counsel asked him if he was present at the Louisiana Nurses Convention at the Covington Holiday Inn on October 22-24, 1986. Deputy Pierre replied that he was not. Defense counsel asked Deputy Pierre if he followed the victim on these dates and wore a disguise. Deputy Pierre also replied to these questions in the negative. Finally, when asked if he had placed the victim under surveillance either on October 22-24, 1986, or May 17, 1987, Deputy Pierre replied, "definitely not."
Subsequently, defense counsel called Ms. Pogue as a witness. However, as noted above, the trial court would not permit her to testify about the alleged harassment of, or threats made to, the victim at the October 22-24 convention. Although the trial court's specific reason for such a ruling is not in the record, it appears that the trial court ruled that the incident was too remote to be relevant.
It is the trial court's responsibility to determine admissibility related to issues of relevancy, to issues of collateral impeachment, and to issues of remote circumstances that may tend to shed light upon the ultimate issue (reasonable hypothesis of innocence) in a circumstantial evidence case. The trial court necessarily has some discretion in these areas; and, if error is *140 committed and this Court finds, beyond a reasonable doubt, that the error was harmless in light of the total circumstances, the defendant's conviction will not be overturned. State v. Humphrey, 412 So.2d 507, 516 (La.1981).
Initially, as to the defendant's contention that Ms. Pogue would testify about a more recent incident (wherein the same man followed the victim around the North Shore Mall in Slidell only a few weeks before her death), we note that defense counsel's questioning of Ms. Pogue suggested no such event, nor did defense counsel cross-examine Deputy Pierre relative to such an incident. Fully cognizant of the defendant's constitutional right to present a defense, see State v. Patch, 470 So.2d 585, 588 (La.App. 1st Cir.), writ denied, 475 So.2d 358 (La.1985), we nevertheless conclude that the trial court correctly prevented Ms. Pogue from testifying about the alleged October 22-24, 1986, incident. At various points during the trial, the defense suggested that the victim was killed by her daughter, her father, Deputy Pierre, or someone else. The obvious implication of Ms. Pogue's testimony, if it had been given, would have been that Deputy Pierre might have killed the victim, since he allegedly followed, harassed, and/or threatened her in the past. This implication was clearly presented to the jury through defense counsel's cross-examination of Deputy Pierre and his attempt to have Ms. Pogue testify on the matter. Therefore, even assuming, arguendo, that the trial court erred in preventing Ms. Pogue's testimony, we find that such error was harmless beyond a reasonable doubt. La.C.Cr.P. art. 921. See State v. Humphrey, 412 So.2d at 517; State v. Clay, 441 So.2d 1227, 1232 (La.App. 1st Cir.1983), writ denied, 446 So.2d 1213 (La.1984).
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SIXTEEN:
In this assignment of error, the defendant contends that the trial court prevented a defense witness, Melba Ray Lee, from testifying about an alleged sexual spying incident involving Deputy Pierre, and from testifying about Deputy Pierre's reputation.
Initially, we note that Ms. Lee was permitted to testify about the alleged sexual spying incident. The only objection in relation to this line of questioning was the prosecutor's objection to the following question elicited by defense counsel: "And sometime after that, did you have a feeling, an eerie feeling come about you?" The prosecutor's objection to this question was properly sustained by the trial court since the question was leading and suggested that the witness experienced an "eerie feeling." See La.R.S. 15:277. After the objection was sustained, defense counsel resumed this line of questioning about the alleged sexual spying incident.[7]
Concerning the line of questioning about Deputy Pierre's reputation, the following colloquy occurred during the direct examination of Ms. Lee:
DEFENSE COUNSEL:
Q And do you know Mr. Pierre's reputation in the community insofar as being a very weird and unusual person?
PROSECUTOR: Objection, Your Honor.
BY THE COURT: I'm going to sustain that.
DEFENSE COUNSEL:
Q. Do you know anything at all about his reputation, ma'am?
PROSECUTOR: Same objection.
BY THE COURT: Sustained.
DEFENSE COUNSEL: That's all the questions I have.
Again, the first question about Deputy Pierre's reputation was a leading question, suggesting that he was a "very weird and unusual person." The prosecutor's objection to this question was properly sustained. See La.R.S. 15:277. The prosecutor's objection to the second question about Deputy Pierre's reputation was also properly *141 sustained because the question was too broad. The question should have been limited to Ms. Lee's knowledge of Deputy Pierre's general reputation for truth or moral character. See La.R.S. 15:483, 490, and 491. The question as posed could well have elicited a response beyond the permissible scope of a credibility attack. See State v. Edmond, 399 So.2d 187, 190 (La. 1981). Furthermore, in light of Ms. Lee's earlier response that she "[j]ust barely" knew Deputy Pierre, it is doubtful that she was qualified to testify about Deputy Pierre's general reputation.
This assignment of error is meritless.

ASSIGNMENT OF ERROR NO. SEVENTEEN:
In this assignment of error, the defendant contends that the trial court erred in denying his supplemental motions for new trial. After the defendant's conviction, he filed a motion for new trial, an amended motion for new trial, and a motion for post-verdict judgment of acquittal. After a hearing, the trial court denied these motions and imposed sentence. Thereafter, appeal counsel filed several supplemental motions for new trial. This Court remanded the case to the trial court for consideration of these motions.[8] After a hearing, these supplemental motions for new trial were also denied. (R 1817-1889).
In a motion for new trial based upon the discovery of new and material evidence, the burden is on the defendant to show that the new evidence was not discoverable prior to or during trial and that, if the new evidence had been introduced at trial, it probably would have caused the trier-of-fact to reach a different verdict. La.C.Cr.P. art. 851(3); State v. Spears, 504 So.2d 974, 979 (La.App. 1st Cir.), writ denied, 507 So.2d 225 (La.1987). In evaluating whether or not the newly discovered evidence warrants a new trial, the test to be employed is not simply whether or not another jury might bring in a different verdict, but whether or not the new evidence is so material that it ought to produce a verdict different from that rendered at the trial. State v. Spears, 504 So.2d at 979. Furthermore, the trial court's decision on a motion for a new trial will not be disturbed absent a clear abuse of discretion. State v. Williams, 521 So.2d 629, 632 (La.App. 1st Cir.1988).
The defendant's supplemental motions for new trial were based on newly discovered evidence. In his brief to this Court, the defendant claims that the following evidence warranted a new trial: (1) the Coroner, Dr. Crumpler, testified that he could not rule out the possibility that the victim committed suicide; (2) Keith Prestridge, the Postmaster of Mandeville, Louisiana, testified that the defendant's personal meeting with postal officials in Hammond on Monday, May 18, 1987, was necessary in order to renegotiate his mail contract, such testimony being in direct conflict with the trial testimony of postal supervisor Edmond Harris, who testified that the defendant could have mailed his postal contract; (3) Jenny Pope's friend, Christine Payne, testified that, while talking on the phone with Jenny at approximately 2:30 p.m. on Sunday, May 17, 1988, she heard the victim's voice in the background, such testimony being slightly later than Jenny Pope's trial testimony that she discovered her mother to be missing around 2:00 p.m.; (4) a private investigator, Edgar Magee, testified that numerous holly bushes were found on the defendant's property, such testimony being in direct conflict with the trial testimony of Sgt. Jack Pennington of the St. Tammany Parish Sheriff's Office, who testified at the trial that he found no such holly bushes on the defendant's property; (5) Mr. Magee testified that during the month that the defendant bought his pistol from Gibson's Store, ten other such weapons with consecutive serial numbers were purchased by other customers; and (6) Ms. Betty Pogue, if allowed, would have testified about alleged harassment and threats made upon the victim by Paul Pierre.
However, the above testimony of Dr. Crumpler, Mr. Prestridge, Miss Payne, and Mr. Magee cannot qualify as "newly discovered *142 evidence." In fact, such information could have been obtained from these witnesses, or other witnesses, far in advance of trial had the defendant exercised due diligence. With regard to Ms. Pogue, we note that the trial court would not allow her to testify at the hearing, and this ruling was consistent with the trial court's ruling at trial that such evidence was irrelevant. Accordingly, we find no abuse of discretion by the trial court in denying the defendant's supplemental motions for new trial.
For the above reasons, this assignment of error is meritless.

ASSIGNMENT OF ERROR NO. EIGHTEEN:
In this assignment of error, the defendant contends that, because of error patent on the face of the record, his conviction and sentence should be reversed. However, in his brief to this Court, the defendant did not cite any specific patent errors. Rather, he merely requested that this Court review the record for errors patent, which this Court would have done in any event. We have thoroughly inspected the pleadings and proceedings in the record on appeal, and our inspection has failed to reveal any errors patent on the face of the record. See La.C.Cr.P. art. 920(2); State v. Stringer, 450 So.2d 1056 (La.App. 1st Cir.1984).
This assignment of error is meritless.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] La.C.Cr.P. art. 764 now provides:

The exclusion of witnesses is governed by Louisiana Code of Evidence Article 615.
Louisiana Code of Evidence Article 615 A(2) provides:
On its own motion the court may, and on request of a party the court shall, order that the witnesses be excluded from the courtroom or from a place where they can see or hear the proceedings, and refrain from discussing the facts of the case with anyone other than counsel in the case. In the interests of justice, the court may exempt any witness from its order of exclusion. However, this Article does not authorize exclusion of:
* * * * * *
(2) A single officer or single employee of a party which is not a natural person designated as its representative or case agent by its attorney; ...
Comment (d) to Louisiana Code of Evidence Article 615 provides, in pertinent part:
On the other hand, the exemption of representatives may, if mechanically applied, result in manifest unfairness such as by undermining the right to meaningful cross-examination. Nothing in this Article is intended to deprive the trial court of the power to sequester witnesses in such cases in the interests of justice. See C.Cr.P. Art. 17. Such a potentially prejudicial situation is presented, of course, in criminal cases when a law enforcement officer who is designated as the state's representative is expected also to testify as a fact witness. In such a situation the court should take appropriate measures to minimize the possibility of prejudice, such as permitting the case agent to be designated as the state's representative only if he testifies prior to all other fact witnesses.
[2] In determining whether a ruling on a motion to suppress was correct, this Court is not limited to the evidence adduced at the hearing on that motion. We may consider all pertinent evidence given at the trial of the case. State v. Fleming, 457 So.2d 1232, 1235 n. 3 (La.App. 1st Cir.), writ denied, 462 So.2d 191 (La.1984).
[3] Any person adversely affected by an unreasonable search, seizure, or invasion of privacy proscribed by our constitution may assert the invalidity thereof in court. La. Const. Art. 1, § 5; State v. Gibson, 391 So.2d 421, 425 (La.1980). However, the defendant had no privacy interests in State Exhibits 22 and 23. The victim was dead when these items were seized by Mrs. Stein and Mrs. McLemore and, therefore, maintained no privacy interests therein. Given the circumstances of the victim's disappearance, the seizure of these items by Mrs. Stein and Mrs. McLemore was not unreasonable.
[4] LSA-R.S. 15:275, 277, 435, 463, 483, 487, 490, 491, and 493, which are cited at various places in this opinion, were in effect at the time of the instant trial. However, these provisions were repealed by the new Code of Evidence, which became effective on January 1, 1989. See Act 515 of 1988.
[5] Although the Louisiana Code of Evidence was not in effect at the time of the instant trial, which took place March 31 through June 4, 1988, Article 804 B(5) provides a useful definition of the business records exception to the hearsay rule.
[6] The items in State Exhibit 35 which were computer data printouts of financial records might have been admissible under the business records exception to the hearsay rule without the necessity of identifying, locating, and producing as witnesses the individuals who made the entries. See State v. Armstead, 432 So.2d 837, 839 n. 2 (La.1983).
[7] Additionally, we note that Deputy Pierre was cross-examined about this incident. (R 1185-1186).
[8] State v. Revere, Docket No. KM 88 1785, decided December 13, 1988. (R 225).